ALBERT L. HARLOW ET AL. *v.* PLANNING AND ZONING COMMISSION OF THE TOWN OF WESTPORT (12268)

PETERS, HEALEY, PARSKEY, SHEA and GRILLO, Js.

Argued May 4—decision released August 7, 1984

*Alan R. Spirer,* for the appellant (defendant).

*W. Bradley Morehouse,* with whom was *Albert L. Harlow,* for the appellees (plaintiffs).

PETERS, J. This administrative appeal, like the appeal in *Arnold Bernhard & Co.* v. *Planning & Zoning Commission,* 194 Conn. 152, 479 A.2d 801 (1984), decided today, arises out of the enactment of a municipal zoning moratorium. This case turns, however, on two issues not presented in the *Bernhard* case, the applicability of the moratorium to a site plan application filed

before the effective date of the moratorium, and the propriety of an order of mandamus to compel zoning commission action on a site plan application.

The plaintiffs, Albert L. Harlow, W. Bradley Morehouse and Walter M. Andrew, Jr., d/b/a HMA Associates, a partnership, own property in Westport. They appealed to the trial court from the action of the defendant Westport planning and zoning commission in enacting § 24-13 of the Westport Zoning Regulations which placed a nine month moratorium on the consideration of future applications for site plan reviews for business development in an area including the plaintiffs' property. The trial court sustained the plaintiffs' appeal and issued an order of mandamus directing the defendant to act on the plaintiffs' application for site plan approval. The defendant, upon our grant of certification, has appealed. We find no error.

The facts are undisputed. The plaintiffs own approximately one acre of land in a section of Westport that was zoned for business use from 1929 to 1979. On July 5, 1978, they filed an application with the defendant commission for site plan approval for the construction of an office building on their property, a use then permitted by applicable zoning regulations. That application was effectively received by the defendant at its regularly scheduled meeting on July 6, 1978. See General Statutes § 8-7d (c).[1]

---

[1] General Statutes § 8-7d, subsection (c) provides as follows: "For purposes of subsection (a) or (b) of this section, the day of receipt of a petition, application, request or appeal shall be the day of the next regularly scheduled meeting of such commission or board, immediately following the day of submission to such board or commission or its agent of such petition, application, request or appeal or thirty-five days after such submission, whichever is sooner. If the commission or board does not maintain an office with regular office hours, the office of the clerk of the municipality shall act as the agent of such commission or board for the receipt of any petition, application, request or appeal."

On July 13, 1978, effective July 20, 1978, the defendant adopted a zoning moratorium covering fourteen acres of the business district of the town of Westport. The plaintiffs' property falls within the designated acreage. The newly enacted § 24-13 of the Westport Zoning Regulations read as follows: "No future applications involving any changes in Zone for business uses, Site Plan reviews for business development activities affecting property in that portion of the Business district located along the north side of the Post Road West between the Norwalk town line and Sylvan Road North shall be accepted, considered or acted upon by the Westport Planning and Zoning Commission during the nine month period from the date of adoption to April 30, 1979."

Thereafter the defendant commission took a number of actions in February and April of 1979, with regard to the plaintiffs' site plan application, in each instance denying the plaintiffs' application on the basis of the moratorium. Shortly after the expiration of the moratorium on April 30, 1979, the defendant enacted a zoning amendment to change the zoning classification of part of the business section, including the plaintiffs' property, from business to residential. A public hearing had been held on the proposed change on April 23, 1979, and the change was voted on October 25, 1979.

In their appeal to the trial court, which was taken on August 4, 1978, the plaintiffs claimed that the moratorium was invalid, and sought injunctive and other appropriate relief. Subsequently, they filed an application for an order of mandamus.[2] The trial court,

---

[2] The complete, rather complex, procedural history of this case is as follows. The plaintiffs filed their appeal to the trial court in August, 1978. In January, 1979, the trial court, *Jacobson, J.,* denied the plaintiffs' motion for a temporary injunction prohibiting the application of the moratorium to their property. Subsequently, in April, 1979, the plaintiffs sought an order of mandamus to compel the commission to process the February 28, 1979 version of their site plan application according to the regulations in effect

*Herman, J.,* state trial referee, held that the moratorium, by its own terms, did not apply to the plaintiffs' application for site plan approval because that application had been filed approximately fifteen days before the effective date of the moratorium. The trial court also held the moratorium to be invalid. It issued an order of mandamus directing the defendant to act on the plaintiffs' application in accordance with pertinent zoning regulations which were in effect on July 5, 1978.

The defendant commission raises numerous issues on this appeal. Its principal claims of error are that the trial court erred: (1) in failing to dismiss the plaintiffs' case on the grounds of mootness; (2) in holding the moratorium inapplicable and invalid; and (3) in issuing its order of mandamus. We are unpersuaded by any of these claims.

The issue of mootness arises out of the expiration of the moratorium on April 30, 1979, before the render-

at the time of its filing. No decision was then rendered on the mandamus action, but later that month the trial court, *Herman, J.,* granted a temporary injunction enjoining the commission from proceeding with any amendment to rezone the plaintiffs' property from business to residential use, modified so as not to prevent a public hearing on the proposed amendment. A trial was held before *Jacobson, J.,* on the underlying zoning appeal in July, 1979. In October, 1979, the temporary injunction was dissolved and the commission immediately passed the change of zone amendment. Apparently because of a question as to the legality of the procedure used to adopt the amendment, a new hearing on the same amendment was scheduled for March 4, 1980. On March 3, the plaintiffs obtained a temporary injunction prohibiting any change of zone affecting their property. This injunction was partially dissolved in November, 1980, in accordance with a stipulation of the parties that the zone change, if adopted, would not be applicable to the plaintiffs' property, and that the plaintiffs' property would "retain its existing zoning classification pending further action by the Commission or further order of this Court." Subsequently, the parties stipulated that the zone change had, in fact, been enacted in October, 1979. Because the trial court had failed to render a decision within the 120 days prescribed by General Statutes § 51-183b, a new trial was held and a decision was issued in May, 1983, by *Herman, J.* In that decision *Herman, J.,* addressed both the administrative appeal and the ancillary application for an order of mandamus, which bear the same trial court docket number.

ing of the judgment by the trial court. The question is whether that expiration deprived the trial court of a live controversy, or of an ability to afford relief to the plaintiffs. See *Waterbury Hospital* v. *Connecticut Health Care Associates,* 186 Conn. 247, 249–50, 440 A.2d 310 (1982); *Rosnick* v. *Zoning Commission,* 172 Conn. 306, 308–309, 374 A.2d 245 (1977). In the circumstances of this case, the trial court had the authority to proceed. The plaintiffs filed their site plan application before the effective date of the moratorium. If, for any reason, their application was not affected by the enactment of the moratorium, they had a right to have their application considered on its merits apart from the moratorium. As a general matter, under General Statutes §§ 8-7d and 8-3 (g), they were entitled to timely action on their application. See *Vartuli* v. *Sotire,* 192 Conn. 353, 360–61, 472 A.2d 336 (1984). That statutory entitlement is not defeated by municipal interposition of an invalid or inapplicable moratorium. Furthermore, the record reveals that, in this case, the parties stipulated that the zoning reclassification of the plaintiffs' property from commercial to residential was not to be applicable to them pending "further order of this Court" on their administrative appeal. This stipulation, entered into in conjunction with the dissolution of a temporary injunction against the reclassification, may reasonably be understood as preserving for the plaintiffs the right to premoratorium consideration of their application, in the event they are successful in invalidating the application of the moratorium to their property.

We turn next to the defendant's substantive claims concerning the applicability and validity of the moratorium. Although we have today held, in *Arnold Bernhard & Co.* v. *Planning & Zoning Commission,* 194 Conn. 152, 479 A.2d 801 (1984), that a zoning moratorium is not beyond the statutory powers of the zoning commission, this holding does not determine the

applicability of the moratorium to the property of these plaintiffs. We conclude that the trial court was correct in its judgment that the moratorium did not apply to them.

It is undisputed that the plaintiffs' site plan application was submitted to, and received by, the defendant commission before the effective date of the moratorium. The regulation enacting the moratorium, § 24-13, itself expressly provides, in pertinent part, "[n]o *future* applications . . . shall be accepted, considered or acted upon by the Westport Planning and Zoning Commission during the nine month period from the date of adoption [July 20, 1978] to April 30, 1979." (Emphasis added.) The plaintiffs' application antedated the moratorium and thus cannot be considered a "future application" within the scope of the moratorium. As the trial court aptly stated: "the very words of the purported 'moratorium' did not contemplate the inclusion of the plaintiffs' application for site approval . . . ."

The defendant urges us to construe the term "future applications" in the moratorium regulation to refer to applications not yet approved rather than to applications not yet received. Nothing either in the history of the enactment of the regulation, or in the objectives that it was intended to further, compels that construction. In the absence of such countervailing principles, the regulation must be interpreted in light of our ordinary rule that "[w]here the language of the statute is clear and unambiguous, the courts cannot, by construction, read into statutes provisions which are not clearly stated." *Point O'Woods Assn., Inc.* v. *Zoning Board of Appeals,* 178 Conn. 364, 366, 423 A.2d 90 (1979). "A zoning ordinance is a local legislative enactment, and in its interpretation the question is the intention of the legislative body as found from the words employed in the ordinance. . . . The words employed are to be interpreted in their natural and usual meaning." (Cita-

tions omitted.) *Lawrence* v. *Zoning Board of Appeals,* 158 Conn. 509, 511, 264 A.2d 552 (1969). "Future applications," in ordinary parlance, means applications to be received in the future. Had the commission intended a different result, it would have been simple enough for it to have stated expressly that the regulation was to apply to pending as well as to future applications. In the absence of such express language, the interpretation of the regulation is governed by the general presumption that legislation is intended to operate prospectively. General Statutes § 55-3; *Enfield Federal Savings & Loan Assn.* v. *Bissell,* 184 Conn. 569, 571–72, 440 A.2d 220 (1981).

The defendant commission's own actions support the conclusion that the moratorium was inapplicable to the plaintiffs' site plan application. In the regulation enacting the moratorium, it is stated that, during its operative period, no applications "shall be accepted, considered or acted upon by the . . . Commission." Yet on three separate occasions the defendant did act on the plaintiffs' application, passing three separate resolutions relating thereto. The first resolution, on February 8, 1979, denied "acceptance, consideration and approval" of the application. The two subsequent resolutions, on February 15, 1979, and April 23, 1979, were outright denials of the application, both in its original and its amended version. Although the commission cited the moratorium, in each instance, as the basis for its decision, the very fact that it found it necessary to take any action on the application belies its present claim that the moratorium was effective to preclude consideration of pending site plan applications.[3]

---

[3] Consideration, in practice, has been described as "[a] technical term indicating that a tribunal has heard and judicially determined matters submitted to it." Black's Law Dictionary (4th Ed. 1968), citing *Meaney* v. *State Industrial Accident Commission,* 113 Or. 371, 382, 232 P. 789 (1925).

In its final claim of error the defendant maintains that, even if the moratorium was inapplicable to these plaintiffs, the trial court's order of mandamus was erroneous. The order directed the defendant "to act on the plaintiffs' application for site plan approval in accordance with its regulations in effect on July 5, 1978; and which were pertinent to the property of the plaintiffs when they made their submissions to the Westport Planning & Zoning Commission." The defendant argues that: (1) the plaintiffs' site plan application was not properly before the trial court; (2) the trial court lacked authority to direct the defendant to act; and (3) the applicable zoning regulations were not those in effect on July 5, 1978. We find these arguments unpersuasive.

The defendant contends that the plaintiffs' site plan application was not properly before the trial court on this zoning appeal because the application was still pending before the zoning commission when this appeal was taken in August of 1978. As part of their zoning appeal, however, the plaintiffs filed an application for an order of mandamus directing the commission to act on the site plan application without regard to the moratorium or the proposed change of zone.[4] The application for mandamus was filed on April 19, 1979, after the commission had effectively denied the plaintiffs' site plan application three times. The application for mandamus and the original complaint bear the same trial court docket number, and the trial court considered them together, as part of one appeal, when it rendered judgment in this case. An order directing the

---

[4] Although the application for mandamus was, in terms, directed toward the February version of the plaintiffs' site plan application, the trial court and the parties have consistently treated the July and February versions as substantially the same application. Accordingly, the mandamus application provided a proper basis for the trial court's order requiring the commission to consider the plaintiffs' application with reference to the zoning regulations in effect when the application was first filed in July.

commission to decide the application on its merits was not beyond the scope of the authority of the trial court.

The defendant next claims that the plaintiffs were not entitled to the extraordinary remedy of mandamus because they had an adequate remedy at law. "It is well established that mandamus will issue only if the plaintiff can establish: (1) that the plaintiff has a clear legal right to the performance of a duty by the defendant; (2) that the defendant has no discretion with respect to performance of that duty; and (3) that the plaintiff has no adequate remedy at law." *Vartuli* v. *Sotire,* 192 Conn. 353, 365, 472 A.2d 336 (1984); *Chamber of Commerce of Greater Waterbury, Inc.* v. *Murphy,* 179 Conn. 712, 717, 427 A.2d 866 (1980).

The trial court's determination that the moratorium was inapplicable to the plaintiffs' site plan application established the first two requirements for the issuance of the mandamus order. Under General Statutes §§ 8-3 (g) and 8-7d the defendant commission was under a positive duty to decide the application within sixty-five days of its receipt. The plaintiffs had a clear legal right to the performance of this statutory obligation. See *Vartuli* v. *Sotire,* supra, 360–61; *Viking Construction Co.* v. *Planning Commission,* 181 Conn. 243, 246–48, 435 A.2d 29 (1980).

The defendant argues that the plaintiffs had an adequate remedy at law by way of a separate administrative appeal from the denial of their site plan application. Such an appeal, however, could only address the merits of the application and not the commission's refusal to consider the application on its merits. The defendant argues, in effect, that the trial court, having determined that the defendant commission had erroneously applied the moratorium to the plaintiffs' property, was powerless to order any relief. We disagree. The trial court had the authority to fashion an equitable remedy to give

effect to its ruling. It might well have been empowered, on a proper motion, to order the plaintiffs' application to be approved outright, sixty-five days from its receipt having elapsed without action by the defendant commission.[5] *Vartuli* v. *Sotire,* supra, 360–61; *Viking Construction Co.* v. *Planning Commission,* supra, 247–48; *Finn* v. *Planning & Zoning Commission,* 156 Conn. 540, 544, 244 A.2d 391 (1968). A fortiori, it was empowered to impose a lesser sanction compelling the defendant commission only to review the plaintiffs' application.

The defendant argues finally that the trial court erred in ordering it to decide the application in accordance with the regulations in effect on July 5, 1978, prior to the imposition of the moratorium. We disagree. By its own stipulation, the defendant agreed that if the plaintiffs were successful in their zoning appeal, the change in zone from business to residential use would not affect the plaintiffs' property. Furthermore, the commission's statutory obligation to reach a decision within sixty-five days of its receipt of the plaintiffs' application expired on September 9, 1978, well before the zoning reclassification took effect. The zoning regulations affecting the plaintiffs' property were thus the same on July 5, 1978, the date chosen by the trial court, as they were on September 9, 1978, when the commission should have taken some action relating to the application. In these circumstances, the defendant has not been injured by the terms of the trial court's order of mandamus.

There is no error.

In this opinion the other judges concurred.

---

[5] On the appeal to this court, the plaintiffs contend that the trial court should have declared their application approved by operation of law under General Statutes § 8-7d. Since they did not file a cross appeal, however, that claim is not properly before us.