[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On November 13, 1990 plaintiffs Patricia Messina, Josephine Garrett, Stephen Sheenan, Ioza Cummings and Richard Longstreth commenced this action, as Bridgeport residents and users of the Bridgeport sewer system ("resident users"), in five counts against the Bridgeport Water Pollution Control Authority ("WPCA") and the City of Bridgeport. Plaintiffs allege that the WPCA has violated federal, state, and local law by, inter alia, (1) disproportionately assessing sewer user charges at a rate higher for Bridgeport resident sewer users than non-resident sewer users of the Bridgeport Sewer System, and (2) failing to follow mandatory administrative procedures thereby depriving plaintiffs of their right to seek administrative relief. Counts one, three, four and five are brought as class actions on behalf of all Bridgeport resident sewer users and allege respectively: unlawful assessment and levy of user charges for fiscal years 1990, 1987, and 1988; and violation of Connecticut's Unfair Trade Practice Act (CUTPA"). Plaintiffs seek the following relief:
 (1.) By way of a Declaratory Judgment, that the court declare the charges or rates as set by the W.P.C.A. Board of Directors to be unlawful;
 (2.) That the Court enter an Order of Mandamus against the W.P.C.A. and the City of Bridgeport, directing them to reset their sewer use charges in accordance with the applicable law, thereby reducing the present charges as set by the W.P.C.A. for the plaintiff users (and all similarly situated members of the plaintiff class);
 (3.) That the Court set an equitable interim user charge fee for all users in accordance with the applicable Federal, State and Local law(s), until all issues alleged here in can be resolved,
 (4.) That the Court Order and direct the W.P.C.A. to pursue collection of all monies CT Page 4450 owed, including interest and costs of collection, by the Town of Trumbull and/or its resident sewer users to the Bridgeport W.P.C.A. and to accordingly apply those monies to a further reduction in the plaintiffs' sewer use charges.
 (5.) An Order pursuant to the Connecticut Unfair Trade Practices Act, and more particularly Section 42-110m(a) directing the defendants to pay restitution to consumers;
(6.) Damages;
(7.) Restitution;
(8.) Reasonable attorney's fees and costs;
(9.) Punitive damages;
 (10.) Other relief as in law and equity may be appropriate.
The following procedural history is provided in connection with the grounds raised in defendants' motion to strike that were previously addressed in an earlier motion to dismiss.
On November 15, 1990 the defendants moved to cite in the Town of Trumbull as a "necessary party defendant". On December 3, 1990 the court, Hodgson, J. denied the motion. On November 26, 1990 the defendants filed a motion to dismiss the action for lack of subject matter jurisdiction. As to the declaratory judgment action defendants argued that plaintiffs failed to either give notice to or cite in numerous persons who may have an interest in the subject matter of this action. As to the mandamus action defendants argued that the plaintiffs failed to name as a defendant the WPCA Board of Directors, the party that allegedly failed to perform its duty. On January 28, 1991 the court, Hodgson, J., denied the motion to dismiss holding that: (1) plaintiffs' failure to comply with notice requirements is curable, and (2) plaintiffs' failure to join the WPCA Board of Directors as a necessary party is more appropriately raised on a motion to strike. On December 18, 1990 plaintiffs amended their complaint as of right to identify the WPCA as a "board or commission."
On March 6, 1991 defendants filed this motion to strike the entire complaint as legally insufficient. Defendants cite the following grounds: CT Page 4451
 (a) ___ as to class action Declaratory Judgment, the court lacks jurisdiction because the plaintiff's failed to give notice or cite in as parties all persons having an interest in the subject matter of this litigation; C.G.S. Sections 52-29 et seq. (declaratory judgment); 52-105 (class action); C.P.B. Section 389 et. seq. (declaratory judgment); Memorandum of Decision, Judge Hodgson (Exhibit "A")
 (b) the Connecticut Unfair Practice Act (C.G.S. Sections 42-110a et seq.) (the "CUTPA") does not apply to municipalities.
 (c) as to Declaratory Judgment and Mandamus, the Board of Directors of the Defendant W.P.C.A. in setting sewer user fees acted in a legislative and discretionary capacity, therefore mandamus does not lie.
 (d) The plaintiff's failed to join the necessary party, the Board of Directors of the W.P.C.A. as parties to this action therefore this court lacks jurisdiction over the members of the Board of Directors to order them to set user fees; C.G.S. Sections 52-485 et seq. (mandamus); C.P.B. Sections 540 et seq. (mandamus). Memorandum of Law, Judge Hodgson (Exhibit "A").
 (e) The plaintiffs failed to join the necessary party, the Town of Trumbull.
 (f) ___ as to Declaratory Judgment and Mandamus, the plaintiff's have committed laches by their inexcusable delay in raising claims regarding the setting of sewer user fees and thereby have prejudiced the Defendant W.P.C.A.
 (g) The Declaratory Judgment claim is dependant upon the claim for mandamus and if mandamus fails, it must fall with it.
 (h) The Plaintiff's (sic) lack standing as a private cause of action does not lie for an alleged violation of federal and state statutes and regulations. 33 U.S.C. § 1251 et seq.; Connecticut General Statutes Section 22a-416
CT Page 4452
Defendants have filed a supporting memorandum of law and five exhibits.
On March 8, 1991 plaintiffs moved (1) for leave to amend the complaint to add a count for injunctive relief, and (2) to cite in the WPCA Board of Directors as a defendant. On March 14, 1991 plaintiffs filed a motion for order of notice. Rulings have not been made on any of the three foregoing motions.
On March 15, 1991 plaintiffs filed an objection to the motion to strike, a revised memorandum of law, and copies of several documents. Only the third, seventh and eighth grounds for the motion to strike will be addressed at length.[1]
The motion to strike challenges the legal sufficiency of a pleading. Connecticut Practice book 152; Ferryman vs. Groton, 212 Conn. 138, 142 (1989). The motion may not be accompanied by affidavits or any such extraneous material or plead additional facts in the motion. Liljedahl Bros., Inc. vs. Grigsby, 215 Conn. 345, 348 (1990). The motion to strike admits all facts well pleaded and those facts necessarily implied from the allegations. Gordon vs. Bridgeport Housing Authority, 208 Conn. 161, 170 (1988). Facts are to be construed most favorably to the pleader. Rowe v. Godou,209 Conn. 273, 278 (1989).
I. Standing
Defendants argue in their motion to strike that "Plaintiffs lack standing as a private cause of action does not lie for an alleged violation of federal and state statutes and local regulations. 33 U.S.C. § 1251, et seq.; Connecticut General Statutes Section 22a-416."
 Standing concerns the legal right of an individual to set the machinery of the courts in operation. (citation omitted). . .[A] person is not "entitled to set the machinery of the courts in operation except to obtain redress for an injury he has suffered or to prevent an injury he may suffer, either in an individual or a representative capacity." (citation omitted). An individual also has standing to litigate a claim where that right is conferred by statute.
Alarm Applications Co. v. Simsbury v. Volunteer Fire Co.,179 Conn. 541, 546 (1980).
In Alarm Applications Co. v. Simsbury CT Page 4453 Volunteer Fire Co., 179 Conn. 541, 548, 427 A.2d 822 (1980), this court stated: "We have long recognized the capacity of taxpayers of towns and cities to challenge the legality of the actions of their municipal officers by seeking injunctive relief against such action. See Belford v. New Haven, 170 Conn. 46, 52-53, 364 A.2d 194 (1975); Bassett v. Desmond, 140 Conn. 426, 430, 101 A.2d 294 (1953); Sauter v. Mahan, 95 Conn. 311, 314, 111 A. 186 (1920); Mooney v. Clark, 69 Conn. 241, 244, 37 A. 506
(1897); New London v. Brainard, 22 Conn. 553, 557 (1853). Such actions may also be brought where the alleged improper action is that of a quasi-municipal corporation. See Larkin v. Bontatibus, [145 Conn. 570, 576, 145 A.2d 133
(1958)]." We further noted that "our cases in this area have required two conditions for the maintenance of actions seeking to challenge municipal conduct: (1) the plaintiff must be a taxpayer of the defendant municipal entity; and (2) the plaintiff must allege and demonstrate that the allegedly improper municipal conduct causes him to suffer `some pecuniary or other great injury.' Bassett v. Desmond, supra, 430." Alarm Applications Co. v. Simsbury Volunteer Fire Co., supra. 549.
Highgate Condominium Assn. v. Watertown Fire District, 210 Conn. 6,15 (1989) (declaratory judgment action seeking injunctive relief).
 The first condition ensures that there be some legal relationship or nexus between the plaintiff and the municipal entity that established the municipality's duty to expend or allocate tax monies in a manner consistent with law. (Citations omitted). The second condition ensures that our courts will be called upon to decide matters in which the litigants have a specific, legal interest, as distinguished from a mere general interest, in the subject matter of the controversy. (Citations omitted).
Alarm Applications Co., 179 Conn. at 549.
A. Declaratory Judgment
Connecticut Practice Book 389 provides: CT Page 4454
 The court will, in cases not herein excepted, render declaratory judgments as to the existence or nonexistence (a) of any right, power, privilege or immunity; or (b) of any fact upon which the existence or nonexistence of such right, power, privilege or immunity does or may depend, whether such right, power, privilege or immunity now exists or will arise in the future.
Id. Connecticut Practice Book 380 provides:
 The court will not render declaratory judgments upon the complaint of any person:
 (a) unless he has an interest, legal or equitable, by reason of danger of loss or of uncertainty as to his rights or other jural relations; or
 (b) unless there is an actual bona fide and substantial question or issue in dispute or substantial uncertainty or legal relations which requires settlement between the parties; or
 (c) where the court shall be of the opinion that the parties should be left to seek redress by some other form of procedure; or
 (d) unless all persons having an interest in the subject matter of the complaint are parties to the action or have reasonable notice thereof.
Id. See also Conn. Gen. Stat. 52-29.
 "It is a basic principle of our law. . .that the plaintiffs must have standing in order for a court to have jurisdiction to render a declaratory judgment." Connecticut Assn. of Boards of Education, Inc. v. Shedd, 197 Conn. 554, 558, 499 A.2d 797 (1985). Our statutes enable judges of the Superior Court to implement a declaratory judgment procedure. General Statutes 52-29. The CT Page 4455 purpose of a declaratory judgment action is to secure an adjudication of rights where there is a substantial question in dispute or a substantial uncertainty of legal relations between the parties. Practice Book 390(b). (citation omitted).
Connecticut Assn. of Health Care Facilities, Inc. v. Worrell,199 Conn. 609, 613 (1986).
 The provisions of Practice Book 390(b) . . .require that an action for declaratory judgment be employed only where there is a justifiable controversy. Liebeskind v. Waterbury, 142 Conn. 155, 158, 112 A.2d 208 (1955). The 390(b) requirement of an actual controversy is one of subject matter jurisdiction. See Kiszkiel v. Gwiazda, 174 Conn. 176, 180-81, 383 A.2d 1348 (1978); St. John's Roman Catholic Church Corporation v. Darien, 149 Conn. 712, 716-17, 184 A.2d 42 (1962); Liebeskind v. Waterbury, supra, 159.
 Section 390(b) requires a sufficient practical need for the determination of the question in dispute. Kiszkiel v. Gwiazda, supra, 181. "The complaint must state facts sufficient to set forth a cause of action entitling the plaintiff to a declaratory judgment. 1 Anderson, Declaratory Judgments (2d Ed.) 257. To state a cause of action for such relief, facts showing the existence of a substantial controversy or uncertainty of legal relations that requires settlement between the parties must be alleged. Ordinarily, there should be an assertion in the pleadings by one party of a legal relation or status or right in which he has a definite interest, together with an assertion of the denial of it by the other party, thus setting forth a substantial dispute. Id. 258." Lipson v. Bennett, 148 Conn. 385, 389, 171 A.2d 83 (1961); see also Trubek v. Ullman, 147 Conn. 633, 635, 165 A.2d 158, cert. denied, 367 U.S. 907, S.Ct. 1917, 6 L.Ed.2d 1249 (1960). CT Page 4456
ASL Associates v. Zoning Commission, 18 Conn. App. 542, 545-46
(1989).
 Although our state constitution contains no "case or controversy" requirement like that found in article three of the United States Constitution; Flast v. Cohen, supra, 95; our rules of practice provide that the court will not render a declaratory judgment on the complaint of a person "unless he has an interest, legal or equitable, by reason of danger of loss or of uncertainty as to his rights or other jural relations which requires settlement between the parties." Practice Book 390(a). As we have long recognized, a person is not "`entitled to set the machinery of the courts in operation except to obtain redress for an injury he has suffered or to prevent an injury he may suffer, either in an individual or representative capacity.' Bassett v. Desmond, [supra, 430]." . . .Alarm Applications Co. v. Simsbury Volunteer Fire Co., 179 Conn. 541, 546, 427 A.2d 822 (1980); see Belford v. New Haven, 170 Conn. 46, 53, 364 A.2d 194
(1975) . . . .[A] sufficient personal interest is "`something more than is comprised in the most ardent wish or partial feeling. It implies a right in the subject of controversy, which a decree, more nearly or remotely, may affect.' Crocker v. Higgins, 7 Conn. 343, 346 [1829]." (Emphasis in original).
Connect Assn. of Health Care Facilities, Inc. v. Worrell,
199 Conn. 609, 613-14 (1986).
 A court "should not entertain an action for a declaratory judgment when an ordinary action affords a remedy as effective, convenient and complete. . . .but unless that clearly appears, the matter rests within the discretion of the court." (Citations omitted; emphasis added.) CT Page 4457
Leoni v. Water Pollution Control Authority, 21 Conn. App. 77,83 (1990).
B. Mandamus
Connecticut Practice Book 541 provides in part, "An action of mandamus may be brought in his individual right by any person who claims that he is entitled to that remedy to enforce a private duty owed to him. . . ." Id.
 "The writ of mandamus is an extraordinary remedy to be applied only under exceptional conditions, and is not to be extended beyond its well-established limits." Lahiff v. St. Joseph's Total Abstinence Society. 76 Conn. 648, 651, 57 A. 692 (1904); McAllister v. Nichols, 193 Conn. 168, 171, 474 A.2d 792 (1984). Furthermore, "[m]andamus neither gives nor defines rights which one does not already have. It enforces, it commands, performance of a duty. It acts at the instance of one having a complete and immediate legal right; it cannot and it does not act upon a doubtful or a contested right. . . ." State ex rel. Comstock v. Hempstead, supra, 561; McAllister v. Nichols, supra, 171-72. A party seeking a writ of mandamus must establish: "(1) that the plaintiff has a clear legal right to the performance of a duty by the defendant; (2) that the defendant has no discretion with respect to performance of that duty: and (3) that the plaintiff has no adequate remedy at law." Vartuli v. Sotire, 192 Conn. 353, 365, 472 A.2d 336
(1984); Harlow v. Planning Zoning Commission, 194 Conn. 187, 196, 479 A.2d 808 (1984).
Hennessey v. Bridgeport, 213 Conn. 656, 659 (1990). "The party who seeks the performance of the duty has the burden of establishing his clear legal right to its performance." M L Homes, Inc. v. Zoning Planning Commission, 187 Conn. 232, 245
(1982). "Although the remedy by mandamus is at law, its allowance is governed by equitable principles. . . ." Id. at 246.
Plaintiffs allege that they are Bridgeport residents and users of the Bridgeport sewer system and as such pay a fee as CT Page 4458 established by the WPCA. Plaintiffs allege that the WPCA has established user charges in violation of mandatory statutory and regulatory requirements. Plaintiffs allege that as a result of the WPCA's action plaintiffs have been damaged in that: (1) they were charged disproportionately higher charges than were residents of other towns who use the Bridgeport Sewer system, and (2) they were prevented from seeking their statutory rights to appeal and are without a legal remedy. Plaintiffs assert the right to have the WPCA re-assess the sewer user charges pursuant to law.
The plaintiffs have alleged facts sufficient for standing in both a declaratory judgment and a mandamus action. See Cyr v. Coventry, 216 Conn. 436 (1990) (declaratory judgment action by property owners against the Coventry WPCA for alleged unlawful levy of assessments of sewer benefits.)
Contrary to defendants' argument, plaintiffs are not bringing an action pursuant to the Federal Clean Water Act. Bridgeport Ordinance 29-27 requires the WPCA to establish sewer user charges to "reflect the proportional distribution of costs among all users pursuant to Chapter 7-255 of the Connecticut General Statutes and Section 204(b) of 33 U.S.C. § 1284(b)." The ordinance incorporates the standards of section 204(b) of the Federal Clean Water Act and section 7-255 of the Connecticut General Statutes.
In construing the complaint in a manner most favorable to the plaintiffs, plaintiffs are asserting an action for disproportionate establishment of sewer user fees in violation of Bridgeport Ordinance 29-27 and the Federal and State Standards incorporated therein. As such, the plaintiffs have sufficiently alleged standing to challenge the WPCA's alleged ultra vires action. Accordingly, the motion to strike is denied as to this eighth ground.
II. Mandamus-Discretionary v. Mandatory
Defendants argue in their motion to strike that the WPCA Board of Directors acted in a discretionary capacity in setting sewer user fees and therefore mandamus does not lie.
 A party seeking a writ of mandamus must establish: "(1) that the plaintiff has a clear legal right to the performance of a duty by the defendant; (2) that the defendant has no discretion with respect to performance of that duty: and (3) that the plaintiff has no adequate remedy at law." Vartuli v. Sotire, 192 Conn. 353, CT Page 4459 365, 472 A.2d 336 (1984); Harlow v. Planning Zoning Commission, 194 Conn. 187, 196, 479 A.2d 808 (1984).
Hennessey v. Bridgeport, 213 Conn. 656, 659 (1990).
 The test to be applied in determining whether a statute is mandatory or directory is whether the prescribed mode of action is the essence of the thing to be accomplished, or in other words, whether it relates to a matter of substance or a matter of convenience. International Brotherhood of Teamsters v. Shapiro, 138 Conn. 57, 68, 82 A.2d 345
(1951). If it is a matter of substance, the statutory provision is mandatory. State ex rel. Eastern Color Printing Co. v. Jenks, 150 Conn. 444, 451, 190 A.2d 591
(1963). If, however, the legislature provision is designed to secure order, system and dispatch in the proceedings, it is generally held to be directory, especially where the requirement is stated in affirmative terms unaccompanied by negative words. Winslow v. Zoning Board, 143 Conn. 381, 388, 122 A.2d 789
(1956). "Such a statutory provision is one which prescribes what shall be done but does not invalidate action upon a failure to comply." Broadriver, Inc. v. Stamford, 158 Conn. 522, 529, 265 A.2d 75
(1969).
Fidelity Trust Co. v. BVD Associates, 196 Conn. 270, 278
(1985).
The courts have looked to additional guidelines in determining the connotation of the words "shall" and "may."
 The use of "shall" and "may" which are words "commonly mandatory and directory in connotation, [is] a factor that evidences affirmative selectivity of terms with specific intent to be distinctive in meaning. . . . [They] must then be assumed to have been used with discrimination and a full awareness of the difference in their ordinary meaning" CT Page 4460 (citations omitted).
Farricielli v. Personnel Appeal Board, 186 Conn. 198, 203
(1982). It has been recognized, however, that "use of the word `shall,' though significant does not invariably create a mandatory duty because statutes must be construed as a whole to ascertain the legislative intention." (citations omitted). Framontano v. Dilieto, 192 Conn. 426, 433-34 (1984).
"When the legislation contains a specific definition, the courts are bound to accept that definition." International Business Machine Corp. v. Brown, 167 Conn. 123,134 (1974). "A local ordinance is a municipal legislative enactment and the same canons of construction which we use in interpreting statutes are applicable to ordinances." Maciejewski v. West Hartford, 194 Conn. 139, 151
1984).
The plaintiffs allege in their complaint that the WPCA failed to comply with its empowering ordinance in the following respects:
(a) The W.P.C.A. failed to hold a public hearing or failed to publish or correctly publish the notice of the public hearing despite the fact that said published notice is required under Section 29-22 of "The Ordinance";
(b) The W.P.C.A. failed to file with the City Clerk and publish within 5 days after their filing, in a daily newspaper having a circulation in the City of Bridgeport, its Budget and revised charges as required by Section 29-22 of "The Ordinance";
(c) Said W.P.C.A. though its General Manager failed to submit to the Board of Directors, (90) ninety days prior to the close of the fiscal year, "an annual budget of the next fiscal year's projected revenues and expenses of the W.P.C.A. and recommended sewer user charges as required by Section29-22 of "The Ordinance";
(d) Said W.P.C.A. failed to have a "Cost of Service Study" completed 180 days prior to the close of the fiscal year as required by Section 29-23 of "The Ordinance";
(e) Said W.P.C.A. failed to establish and revise such charges "to reflect the proportional distribution of costs among all users pursuant to C.G.S. Section 7-255. and Section 204(b) of 33 U.S.C. § 1284(b), as required by Section29-27 of "The Ordinance";
(f) The W.P.C.A. has failed to comply with Section 29-32
CT Page 4461 of "The Ordinance" by allowing the Town of Trumbull "to be charged a reduced rate".
Plaintiffs further allege that the WPCA failed to comply with 40 C.F.R. Ch. I subpart 35-929-1 through 3 of the Federal Clean Water Act as follows:
(a) by failing to establish and maintain a user charge system that requires, "each user (or user class) to pay its proportional share of operation and maintenance (including replacement) costs of treatment works within the grantee service area, based on the users proportional contribution to the total waster water loading from all users (or user classes)";
(b) by failing to ever have its sewer user charge system or ordinance approved by the Environmental Protection Agency and The State Department of Environmental Protection as required by Federal Law;
(a) Further, the W.P.C.A has unfairly and unreasonably allowed the Town of Trumbull, as a subscriber and user of the Bridgeport sewer system, to pay a user-charge rate that is greatly below "its proportional share of operation and maintenance (including replacement) costs of treatment works within the grantees service area, based on Trumbull's proportional contribution to the total waste water loading from all users or user classes" (see Exhibit "B" attached hereto);
(d) By unfairly, unlawfully, and retroactively reducing the Trumbull rate in November of 1988, from $1.16 per CCF to .77 per CCF for all billings due the W.P.C.A. from July of 1988 through June 30, 1989 without a public hearing and without justifiable cause, while still charging the plaintiffs the full rate as set in July of 1988 of $1.16 per CCF. (See attached Exhibit "C");
(e) by unfairly and unlawfully charging the Town of Trumbull commencing on July 1, 1989 a lower, reduced rate of $1.16 per CCF for fiscal year 1989 while charging the plaintiffs $1.50 per CCF;
(f) by unfairly and unlawfully charging the Town of Trumbull commencing July 1, 1990 a lower, reduced rate of $1.12 per CCF for fiscal year 1990-1991, while charging the plaintiffs $1.95 per CCF;
(g) by unlawfully and unfairly forgiving interest owed by the Town of Trumbull (as a user of the sewer system) to the W.P.C.A. in the amount of $20,000.00 in August of 1989, (see attached Exhibit "D"), as well as other interest monies owed CT Page 4462 for late and delinquent payments, while vigorously pursuing collection actions against the plaintiff, Bridgeport users, with civil actions and property liens and threats of foreclosure or service termination;
(h) The W.P.C.A. has further acted unfairly and unlawfully in agreeing to give the Town of Trumbull a generous rate of interest for all present and future delinquent payments of 8% eight percent while charging the plaintiffs and Bridgeport users 18% for any monies not paid within 30 days;
(i) by overcharging the plaintiffs since July 1, 1988 by an estimated 20% to 25% as compared to other users of the system including the Town of Trumbull. This is done by charging the plaintiffs based upon the metering of the total water they use, (as per the Bridgeport Hydraulic Company water bills). This is done without consideration, credit or any accounting reduction for the percentage of the water they use that does not enter the sewage system. While at the same time, the Town of Trumbull is metered only on the amount of flow it places into the sewer system;
(j) by not metering or charging the Town of Trumbull for at least the last 3 years for its flow that enters the sewer system through a third pipe located in the area of Old Town Road;
(k) by not charging for or collecting the required surcharges from industrial users and outside users for the additional cost of treating and processing suspended solids (S.S.) and Bio-chemical Oxygen Demand (B.O.D.) and thereby overcharging the plaintiffs.
Plaintiffs further allege that the WPCA failed to comply with Conn. Gen. Stat. 7-255 in the following respects:
(a) By failing to "publish at least ten days before "the date" of the public hearing the notice of the time, place, and purpose of such hearing. . .in a newspaper having a general circulation in the municipality;
(b) By failing to place a copy of the proposed charges on file in the Office of the City Clerk to be available for inspection by the public at least 10 days before the date of such hearing;
(c) By failing to file a copy of the established or revised charges or rates in the Office of the City Clerk upon establishing or revising such charges (See attached Exhibit "A"); CT Page 4463
(d) By failing to, within five days after the such filing with the City Clerk, cause notice to be published in a newspaper having a general circulation in the municipality and in such publication stating the date when such charges were filed and the time and manner of paying such charges, and that any appeals from such charges must be taken within 21 days after such filing;
(e) By failing to comply with C.G.S. Section 7-255(b) by not meeting requirements of the Federal Water Pollution Control Act Amendment of 1972, namely 33 U.S.C.A. Section 1281, et seq., along with the applicable Federal Regulations regarding "user charge systems".
Plaintiffs seek the court to enter an order of mandamus directing defendants (1) to reset the sewer use charges, and (2) to collect monies owed by Trumbull resident users of the Bridgeport sewer system and apply the money therefrom to reduce plaintiffs' charges.
Chapter 29 of the Bridgeport Ordinances entitled Utilities establishes the local WPCA. Section 29-2 of the ordinance creates the WPCA pursuant to Chapter 103, 7-245 to 7-273A of Connecticut's General Statutes. Pursuant to chapter 29, the WPCA may establish sewerage system use charges and fees for discharging wastewater and sewage into the sewage system. Sections 29-22, 29-23, 29-27, and 29-32 of which plaintiffs allege violations, provide as follows:
Sec. 29-22 Annual Budget.
 An annual budget of the next fiscal year's projected revenues and expenses of the WPCA and recommended sewer user charges shall be submitted to the WPCA Board of Directors by the General Manager 90 days prior to the close of each fiscal year, and within ten (10) days after such submission shall be published once in a daily newspaper having circulation in the City of Bridgeport. After such publication, but no earlier than ten (10) days after public notice thereof, the WPCA Board of Directors shall hold a public hearing on such projected revenue and expenditures of the WPCA and recommended sewer user charges, and consider and act on such projected revenues and expenses of the WPCA and recommend sewer user charges.
The WPCA budget and sewer user charges, if CT Page 4464 such budget and charges are revised by the WPCA Board of Directors, shall be filed with the City Clerk and published in a daily newspaper having circulation in the City of Bridgeport no later than five (5) days after their filing.
 Each year the budget of the WPCA shall include a line item for unanticipated operating contingencies. The General Manager shall make specific requests to the WPCA Board of Directors for authority to expend funds from the contingency reserve from time to time subject to certification by the Comptroller as to their availability. Expenditures from the repair/replacement reserve, if such funds be available, shall be approved in the same manner as requests for expenditures under the annual appropriation for unanticipated operating contingencies.
Sec. 29-23 Cost of Service Study.
 The General Manager will ensure that an independent cost of service study is performed at least every two years. The General Manager shall review the results of the study and shall submit the study along with a schedule of recommended rates and charges to the WPCA Board of Directors for consideration and public hearing. If the General Manager's recommendations as to the proposed rates and charges are not disapproved, approved or approved with modifications by the WPCA Board of Directors by the first day of the new fiscal year, the General Manager's recommended rates and charges shall automatically become effective and shall be implemented by him until such time that they are superseded by a renewal of the above procedure. Billings for services shall be rendered as the WPCA shall determine. In the period intervening between cost of service studies, the WPCA shall be authorized to amend user charges so long as such charges are based upon the anticipated cost of operating the system and such charges are presented to the general public at a public hearing in accordance with the Notice provisions of Section 7-255 of the General Statutes. The cost of service study is to be completed 180 days prior to the close of the CT Page 4465 fiscal year in which it is conducted.
Sec. 29-27 Basis for Rates and Charges.
 Charges for sanitary sewer services furnished by the WPCA for commercial, residential, industrial and institutional users shall be established and periodically revised by the WPCA. Such charges shall reflect the proportional distribution of costs among all users pursuant to Chapter 7-255 of the Connecticut General Statutes and Section 204(b) of U.S.C. § 1284(b). Cost refers to all costs for operations, maintenance, administration and repair/replacement of the sewer system.
 Separate charges will be levied on all users of the wastewater system to recover their proportionate share of capital costs incurred for the purpose of the acquisition or construction of wastewater treatment facilities.
Sec. 29-32 No Reduced Rates or Free Service Permitted.
 All persons owning, renting, leasing, or having management or control of properties or premises that produce waste that is discharged into the sanitary sewers of the City, including domestic waste, and subject to the provisions of this chapter, shall be charged the rates established by the WPCA, and no reduced rates or free sanitary sewer service shall be furnished to any such person, property or premises. In all cases, the owner of the property shall have final responsibility for the payment of sewer charges.
Other relevant sections of the ordinance which were not cited by the parties are as follows:
Sec. 29-35 Computation of Industrial User Charges.
 The user charges for all manufacturing or other producers of wastewater over a minimum of 25,000 gallons per day to which this chapter applies, except for dry industries, will be computed by the use of the following formula: CT Page 4466
 UC=VX + [YVW (C1-300) + ZVW (C2-350)]. 1000000 1000000
 UC User Charge (in dollars) for each billing charge. V Volume in gallons discharged to the city sanitary sewer system during the billing period. X Cost per gallon of normal strength waste water treated. Y Cost to remove one pound of BOD. Z Cost to remove one pound of TSS. W Weight of water (8.33 lb./gal.). C1 Concentration of discharge of BOD in mg/l. C2 Concentration of discharge of TSS in mg/l.
 Those industries defined herein as dry industries, or industries producing wastes containing BOD of less than three hundred (300) mg/l and TSS of less than three hundred fifty (350) mg/l, will pay a sewer service charge as established and revised by the WPCA.
 When an industry produces both domestic and process waste, the wastewater so delivered will be considered as industrial wastewater and the user charge computations will be in compliance with those described above, based on combined volume, BOD and TSS content.
 A permittee may reduce his user charge rate by greater removals in pretreatment or plant operation procedure, but once the pretreatment or plant procedure is established to obtain a uniform or lower rate, written consent from the general manager to increase the delivered strength shall be required, and charges for a higher rate based on tests by the WPCA may be made without other notice to the permittee.
 Monthly or quarterly billing for industrial wastewater disposal will be accomplished using the established procedures.
Sec. 29-29 Rates, Fees and Charges.
 The WPCA shall bill customers for sanitary sewer and other services provided based on the CT Page 4467 following: (a) Residential Customer Charge. A periodic charge per residential dwelling unit. The residential customer charge may be levied on the basis of a flat charge per residential dwelling unit or water consumption, as decided by the WPCA. (b) Industrial/Commercial/Institutional Charge. A periodic charge based on water consumption for the preceding period. (c) Other fees as may be deemed appropriate by the WPCA. Such fees may be established and amended by the WPCA as necessary. (d) Special Benefits Assessments for the installation of sewers as prescribed in Section 7-249 of the Connecticut General Statutes.
Sec. 29-30 Rates for Property Located Outside City.
 The charges to be made by the WPCA for sewer service to property located outside the limits of the City shall be established on the basis of a formal contract with the WPCA, the charges shown in such contract to be not less than the actual cost to the WPCA, and such contract to be approved by the WPCA.
The ordinance also defines the term "may" as used in chapter 29 as "permissive," 29-3-(36), and "shall" as "mandatory," 29-3-(55). The duties enumerated in Bridgeport Ordinance Chapter 29 that are preceded by the word "shall" are mandatory and therefore vulnerable to a mandamus action. Defendants assert, however, that the assessment of user charges is a discretionary act for which mandamus should not issue.
"A statute may be mandatory yet leave to local implementation the manner in which the statutory duty is to be discharged." (citations omitted). Beccia v. Waterbury,185 Conn. 445, 462 (1981), citing, Sutherland, Statutory Construction (4th Ed. 1971) 4.07.
 "[M]andamus will lie even if the exercise of the duty involves discretion, so long as existence of the duty is ministerial, and provided that the order issued does no more than require the duty to be performed, leaving the manner of its performance to the good faith discretion of the official charged."
Chambers of Commerce of Greater Waterbury, Inc. v. Murphy,179 Conn. 712, 718-19 (1980); See also, State v. Erickson, 104 Conn. 542, CT Page 4468 545-47 (1926) [tax assessments]. Where it is found that "there is but a single course of action which the agency can legally take, a court may direct the agency to follow that course of action." Catino v. Board of Education, 174 Conn. 414,419 (1978).
Therefore, although the actual manner of assessing user fees may be discretionary, the performance of the duties in the Bridgeport Ordinance is mandatory rather than discretionary, and therefore, plaintiffs have alleged a legal right to the performance they seek. Accordingly, the motion to strike should be denied as to this third ground. Because the seventh ground was dependent upon the success of the third, it too must fail.
In conclusion, only the Motion to Strike the Fifth Count is granted.
KATZ, JUDGE