[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On September 10, 1991, the plaintiff Mark Genta and Surfside Development Limited Partnership delivered to Wade Pierce, City Planner and Executive Secretary of the Milford Planning and Zoning Commission, a proposed subdivision map for a five lot subdivision, which is the subject matter of this case. CT Page 5596 Mr. Pierce reviewed the plan and concluded that it complied with the applicable zoning regulations. (See Pg. 3, Par. 6 Defendant's Brief) Thereafter, in accordance with its practice, he distributed copies of the map to the Fire and Police departments, Sewer Commission, City Engineer, Public Works Director and Inland Wetlands Commission for their comment and review. All of the departments except the Sewer Commission reported back favorably on the map. (See Exhibits C, E, F G). The Sewer Commission by letter dated September 16, 1991, (Ex. D) reported that the plans "do not meet the Sewer Commission criteria and would not be approved as submitted."
Thereafter, the plaintiffs made some changes to the plan pursuant to the recommendations of the Engineering Department and on October 3, 1991, Mr. Genta brought to Mr. Pierce a subdivision application, applicable fees and the new map and plans. All of the documents were returned by Pierce for the reason that the Planning and Zoning Commission was considering a regulation change for the subject property which would substantially increase the required square footage per lot. Again on October 7, 1991 Mr. Genta attempted to file the subdivision application, which was again refused by Pierce. Mr. Genta returned on October 8, 1991, in a further effort to file his subdivision application, which was again rejected by Pierce who stated that the Commission left it up to him to decide if he would accept the application.
Thereafter, the plaintiff consulted Attorney David Greenberg, who on October 9, 1991, by letter, (Ex. K) to the Planning and Zoning Commission, attempted to again refile the application and supporting documents. Mr. Pierce, by letter to Greenberg (Ex. J) dated October 11, 1991, described his reasons for rejecting the application (1) the consideration by the Commission of a possible amendment to the zoning regulations for the subject property and the unfavorable report of the Sewer Commission. The plaintiff again by letter dated October 15, 1991 attempted to again file his subdivision application, (Ex. L) which was again rejected and returned on October 16, 1991, (Ex. N). Again on October 25, 1991, the plaintiff mailed in his subdivision application by letter, (Ex. O) which included a copy of the letter from the Administrator of the Sewer Commission (Ex. U), that the plaintiff's revised application met the Sewer Commission criteria and would be submitted to the Sewer Commission for approval at its meeting of November 7, 1991, which approval was in fact given. Again the application CT Page 5597 was rejected.
The Planning and Zoning Commission in fact met on October 15, 1991, and this application was never considered because of the refusal by Mr. Pierce to accept the application. The matter in fact was never considered by the Commission. On January 29, 1992 the plaintiffs demanded a certificate from the Commission approving the subdivision application because of its non-action, (Ex. R) which was rejected on February 10, 1992 (Ex. S).
With reference to the proposed zoning regulation change offered by Pierce as a continuing reason for refusing the plaintiff's application, notice of that proposed change substantially increasing the per lot square footage was originally noticed by publication on October 24, 1991 and approved and adopted on November 19, 1991.
Thereafter the plaintiff Mark Genta brought this action sounding in mandamus directing the Commission to issue a certificate of approval of subdivision because of the Commission's failure to render a decision within the time limitations of Connecticut General Statutes 8-26d. On the date of trial the plaintiff filed an amended complaint adding Matthew Genta and Surfside Development Limited Partnership as additional plaintiffs. In all other respects the complaint was the same and the defendant's Answer and Special Defense filed on April 27, 1993 were the same as originally filed on July 17, 1992. The amendment properly identified the owners of the land comprising the subdivision as of the date of the purported subdivision application.
LAW
The defendant has claimed from the beginning that it was justified in not accepting the plaintiff's application because of the lack of Sewer Commission approval and consideration by the Commission of a proposed zoning regulation change for the subject property. It now raised in its brief that the original application was defective because Matthew Genta was not identified as an owner of one of the parcels (Lot 11) and the beneficiaries of the trust of that lot (11) were not disclosed in the application.
It is true that the plaintiff Matthew Genta was not disclosed as an owner and trustee with Mark Genta of a portion CT Page 5598 of the proposed property until the eve of trial. Plaintiff's Exhibit X, a quit claim deed dated May 11, 1988 and recorded July 1, 1988 in the Milford Land Records passed title to a portion of the subject property (Lot 11) from Velma M. Genta to Mark and Matthew Genta as trustees for several identified and named Genta family members. From the beginning Mark Genta on all applications described himself as a trustee and at no time until the post trial brief has the defendant complained of this technical impediment. The court concludes that the deviation did not render the zoning application defective, and the court will now consider the merits of the defendant's reasons for refusing to accept the plaintiff's application.
That mandamus is a proper remedy for a failure of a zoning commission to comply with the provisions of C.G.S. 8-26d
is without question. Viking Construction Co. v. Planning Commission, 181 Conn. 243 (1980), SSM Associates Limited Partnership v. Plan Zoning Commission, 211 Conn. 331, 335-337
(1989), Gelinas v. West Hartford, 225 Conn. 575 (1993). Mandamus is an extraordinary remedy that is designed to enforce a plain positive duty. It will only issue when the person against whom it is directed is under a clear legal obligation to perform the act compelled and the party seeking the writ has a clear legal right to the performance. The time limitation set forth in 8-26d clearly imposed a mandatory time frame of 65 days for subdivision action.
The defendant from the beginning has maintained that it would not accept this application because 1) it was considering a regulation change for the subject property and 2) the application was incomplete because of a lack of sewer commission approval. The former reason was expressed as early as October 3, 1991 in a conversation between Mr. Pierce and Mark Genta. It is curious therefore, why Mr. Pierce circulated the plaintiff's plan and map at all to 6 town agencies as early as September 11, 1991. That proposed regulation change which would have substantially increased the lot square footage for the property was not even advertised until October 24, 1991 and approved on November 19, 1991. Any reliance by the defendant upon the provisions of sec. 10.4 of the zoning regulations to refuse to accept the application is clearly misplaced. That section allows the zoning enforcement officer to withhold a zoning permit for the construction or substantial alteration of a building for 145 days from the noticing of an amendment to the zoning map or regulations. It does not apply to this CT Page 5599 situation. Assuming that a subdivision plan was in fact filed before the zone change became effective on November 19, 1991, then the provision of C.G.S. 8-28a would protect the rights of the plaintiff herein to be bound only by the terms of the zoning regulations as of the date of the filing of the application. To make it perfectly clear the defendant acting through the executive secretary, Mr. Pierce, had no right to refuse the plaintiff's application because the defendant was considering a regulation change that might at some time in the future render the plaintiff's property non-conforming.
The final question then is when, if ever, was a subdivision application filed and that question requires a determination of whether a final sewer commission approval was necessary before a final subdivision plan was in fact filed. There is little question but that Mr. Genta was trying to file his application before the zoning regulation was changed and it is just as obvious that Mr. Pierce was trying as hard to keep the application from being filed.
The case of Viking Construction Co. v. Planning Commission, supra, is instructive as to the role of a commission in receiving an application. "The receipt of an application form by an administrative body involves the performance of a ministerial act. It does not require the exercise of discretion." In this case Mr. Genta testified that Mr. Pierce told him that he discussed the plaintiff's application with the Planning and Zoning Commission and they left it up to him to accept or reject the application, which he continued to reject. This advice was improper.
At least up to October 24, 1991, the date of the public notice of the proposed zone change, Mr. Pierce testified that the only valid reason for refusing to accept the plaintiff's application was that the plan did not have Sewer Commission approval and therefore was not a Final Subdivision Plan as defined in sec. 5.2.13 of the zoning regulation. It maintains that sec. 2.2.5 of the zoning regulations mandates that all other town agencies must approve the plan before the executive director of the Planning and Zoning Commission must accept the filing of the subdivision application.
Sec. 2.2.5 reads as follows:
ACCEPTANCE BY EXECUTIVE SECRETARY At the CT Page 5600 time of the filing of the Final Subdivision Plan, the Executive Secretary shall accept such plan and shall place the matter on the agenda of the next regular public meeting of the Board; provided the Plan is received and accepted at least two weeks prior to such meeting and further provided, the applicant delivers the required technical approvals or reports a[t] least one week before such meeting. If the above described time requirements are not met, the Plan shall be held for the subsequent regular public meeting of the Board.
That section however, must be read in conjunction with sec. 2.2.4, which reads as follows:
 2.2.4 TECHNICAL APPROVALS The applicant shall obtain from the City Engineer approval of the proposed street layout, alignment, and grades and drainage design, together with a recommendation for the amount of bond, and from the Health Administrator, approval of the proposed design for sewage disposal facilities. In the event the City Engineer or the Health Administrator refuses to approve the applicant's proposal, then the applicant shall obtain a report from such office setting forth the facts of the controversy and shall deliver such report to the Executive Secretary. The board may also require approvals from the Police Department and the Fire Department as to access by fire fighting, police or other public safety equipment to the proposed subdivision.
Section 2.2.4 requires that the applicant obtain the approval of the City Engineer for street layout and drainage design and from the Health Administrator approval of the proposed design of sewage disposal facilities. The section goes on to state that if either agency refused to grant approval the applicant shall obtain a report and deliver it to the executive secretary. Section 2.2.5 then states that the executive secretary shall accept the plan and place the matter on the agenda once the approvals or reports are received. The reports CT Page 5601 referred to obviously relate to the disapproval by either the City Engineer or the Health Administrator. That is precisely what the plaintiff did in this case.
The defendant's brief at page nine seems to concede that an applicant may proceed without "outright approval" of either the City Engineer or the Health Administrator. That appears to be what section 2.2.4 and 2.2.5 state. Exhibit D, the letter of the Sewer Commission, signed by its administrator, dated September 16, 1991, which the defendant claims was the basis for refusing to accept the plaintiff's application would certainly constitute a report as contemplated in section 2.2.4 and 2.2.5 of the regulations. It would be totally unfair and inconsistent to allow the defendant to claim that Exhibit D constituted a basis to refuse the plaintiff's application, but at the same time it does not constitute a report of the disapproval.
These regulations as well as any zoning regulation must be construed as a whole and in such a way as to reconcile all their provisions as far as possible. Kleinsmith v. Planning and Zoning Commission, 157 Conn. 303 (1968). The words used are to be interpreted in accordance with their natural and usual meaning and where the language is clear and unambiguous, courts cannot by construction read provisions into the regulations which are not clearly stated. Lawrence v. Zoning Board of Appeals, 158 Conn. 509, 511 (1969); Harlow v. Planning Zoning Commission, 194 Conn. 187, 193 (1984).
The regulations here contemplated that before a final subdivision plan was accepted that there would be referrals to various town agencies which were made here by Mr. Pierce on September 10, 1991. All of these referred to agencies filed approvals or reports before October 3, 1991. From that point the applicant either individually or through counsel made at least five attempts to file his application. Each one was rejected by Mr. Pierce. The plaintiff made it clear if its application was refused it would seek redress under 8-26d. Still the defendant persisted in its refusal.
The court finds that the subdivision application was filed no later than the letter of Attorney Greenberg of October 9, 1991 and the rejection of Mr. Crabtree on behalf of Mr. Pierce under letter of October 11, 1991 (Ex. J). The next meeting of the Planning and Zoning Commission was held on October 15, 1991, and thereafter October 29, 1991. Upon any CT Page 5602 reading of C.G.S. 8-26d all of the time limits for acting upon the application had long since expired by the time of the applicant's letter of January 29, 1992 demanding a certificate of approval.
Therefore, the plaintiff's request for mandamus is granted and the defendant is ordered to grant a certificate of approval of the five lot subdivision.
Joseph T. Gormley, Jr. Judge