JOHN LOMBARDI *v.* CITY OF BRIDGEPORT ET AL.
(11935)

Argued October 4—decision released November 20, 1984

*Thomas K. Jackson,* with whom were *Barbara Brazzel-Massaro* and, on the brief, *Cheryl A. Rodriguez,* for the appellants (defendants).

*Thomas W. Bucci,* for the appellee (plaintiff).

PARSKEY, J. The issue in this case is whether the plaintiff, a nonprobationary employee of the city of Bridgeport, had a right under the city charter or the state or federal constitutions to appeal a layoff for fiscal reasons to the city's civil service commission. The plaintiff sued the city of Bridgeport and two supervisory city employees for a mandatory injunction to compel the defendants to comply with the commission's rulings requiring the plaintiff's reinstatement. The trial court granted relief, and the defendants have appealed.

The following facts are undisputed. The plaintiff, John Lombardi, was a nonprobationary employee of the city of Bridgeport working as a carpenter in the noncompetitive division of the classified service. The plaintiff's supervisors, acting pursuant to the directive of the mayor, informed the plaintiff on July 8, 1982, that his position had been eliminated. The plaintiff appealed the layoff to the civil service commission which ordered his reinstatement retroactive to July 8.

Upon his return to work on July 22, 1982, the plaintiff was again informed that his position had been eliminated. This notice was later amended to indicate that the termination was due to lack of work. The plaintiff appealed this second layoff to the commission which

again ordered him reinstated. The defendants refused to comply, preventing the plaintiff from returning to his position, and this suit was filed.

In his complaint, the plaintiff alleged violations of his due process and equal protection rights under the state and federal constitutions. In a memorandum of decision dated December 23, 1982, the trial court found that Bridgeport's city charter afforded a right to appeal a fiscally motivated layoff to employees within the city's classified service if they were in the competitive division but not if, like the plaintiff, they were noncompetitive employees. Since it could find no rational basis for this disparity in treatment, the court held that the city charter was violative of equal protection guarantees and ordered that the plaintiff be restored to his former position and status with back pay. In view of its decision on the equal protection issue, the court saw no need to address the plaintiff's claim that he was constitutionally entitled to a hearing under the state and federal due process clauses.

On appeal, the defendants claim that under Bridgeport's city charter, no classified employee has a right of appeal to the civil service commission upon layoff for fiscal reasons. They further contend that the trial court erred in holding that the charter was violative of equal protection guarantees.

It is important to note at the outset that the reasons given by the defendants for terminating the plaintiff's employment are not disputed. At no time during any of the proceedings in this case has the plaintiff alleged that the city's economic problems, cited as the reason for his layoff, were a pretext for a termination that was disciplinary in nature. Nor does the plaintiff question the defendants' authority, after complying with certain procedural requirements, both statutory and constitutional, to lay off city employees due to lack of work or

funds. He simply claims that the city charter, as he reads it, provides a right of appeal to the civil service commission upon fiscally motivated layoffs for competitive employees only, and that this provision violates his equal protection rights as a noncompetitive employee. Although the plaintiff also claims that he is constitutionally entitled to a hearing under the state and federal due process clauses, he does not contend that any negotiated labor agreement or statutory source other than the city charter affords him a right of appeal in these circumstances.

I

The plaintiff's right to a hearing before the commission, as the trial court correctly noted, is to be determined by the express provisions of Bridgeport's city charter. "It is well established that a city's charter is the fountainhead of municipal powers. *State ex rel. Raslavsky* v. *Bonvouloir,* 167 Conn. 357, 362, 355 A.2d 275 (1974). The charter serves as an enabling act, both creating power and prescribing the form in which it must be exercised. *Food, Beverage & Express Drivers Local Union* v. *Shelton,* 147 Conn. 401, 405, 161 A.2d 587 (1960); *Thomson* v. *New Haven,* 100 Conn. 604, 606, 124 A. 247 (1924); *State ex rel. Southey* v. *Lashar,* 71 Conn. 540, 545–46, 42 A. 636 (1899). It follows that agents of a city, including its commissions, have no source of authority beyond the charter." *Perretta* v. *New Britain,* 185 Conn. 88, 92, 440 A.2d 823 (1981). The civil service commission of Bridgeport is thus empowered to hear only those appeals which the charter entitles city employees to present.

The Bridgeport charter contains two provisions which grant civil service employees the right to appeal employment terminations to the commission. Section

21[1] provides that "[n]o person or employee holding a permanent office or position in the classified service shall be removed, discharged or reduced, except for just cause which shall not be political or religious." Upon removal, discharge or reduction, any permanent classified employee may demand the reasons for such action, and may then appeal to the commission which "shall set a date for a hearing or investigation of the reasons for the removal." In the court below, the plaintiff argued that § 21 should be read broadly to enable all classified employees to appeal fiscally motivated layoffs. The trial court declined to accept this broad interpretation, holding that the application of § 21 was expressly limited to removals, discharges and reductions, as distinct from layoffs, suspensions and leaves of absence, treated elsewhere in the charter. We agree with the trial court's reading of § 21.

In *Perretta* v. *New Britain,* supra, 93–100, this court recently interpreted a provision, similar to § 21, in New Britain's city charter and determined that it was intended to cover only disciplinary dismissals and not terminations for lack of work or funds. Id., 100. The court in *Perretta* based its interpretation on the charter's language and structure, noting that "[s]epa-

---

[1] "[Bridgeport city charter, Special Act 431 (1945)] Section 21. No person or employee holding a permanent office or position in the classified service shall be removed, discharged or reduced, except for just cause which shall not be political or religious. A person removed, discharged or reduced shall be furnished, by the appointing authority making the removal, with the reasons, in writing, for such action when demanded by said removed, discharged or reduced person. When reason shall be given by the appointing authority making the removal, a copy of the same shall be immediately forwarded to the commission. Within three days after the removal, discharge or reduction, an appeal may be made to the commission, in writing, by the employee so removed, discharged or reduced. The commission, on receiving such notice of appeal, shall set a date for a hearing or investigation of the reasons for the removal, discharge or reduction, which date shall not be more than thirty days after the date of the removal, discharge or reduction. . . ."

rate provision for layoffs is made in [a different section of the charter] which prescribes only the order of termination and reinstatement in the event of layoff." Id., 97. Similarly, § 8 of the Bridgeport charter[2] outlines re-employment procedures for all classified employees "laid off because of lack of work or lack of funds." The reasoned interpretation of New Britain's charter in *Perretta* applies equally here, and we hold that § 21 does not afford a city employee the right to appeal a fiscally motivated layoff to the commission.

The second provision granting employees a right to be heard before the commission upon termination is found in § 11 of the Bridgeport charter.[3] Section 11 sets

[2] "[Bridgeport city charter, Special Act 431 (1945)] Section 8. When any employee in the classified service, who has been performing his duties in a satisfactory manner as shown by the records of the department or other agency in which he has been employed, shall be laid off because of lack of work or lack of funds, or has been on authorized leave of absence and is ready to report for duty when a position is open, or has resigned in good standing with the consent of the civil service commission and the department under whose jurisdiction he was employed, and has withdrawn his resignation without being restored to his position, the personnel director shall, on order of the commission, cause the name of such employee to be placed on the re-employment list for the appropriate class, for re-employment within two years thereafter when vacancies in such class shall occur. . . ."

[3] "[Bridgeport city charter, Special Act 431 (1945)] Section 11. When a position in the competitive division of the classified service shall become vacant after the passage of this act, and when an appropriate re-employment list or employment list exists for the class to which such position is allocated, the appointing authority, within thirty days of the date said vacancy was created, shall serve notice on the personnel director declaring whether or not it desires to fill the vacancy. If it desires to fill the vacancy, the appointing authority shall, within such thirty days, make requisition upon the personnel director for the name and address of a person eligible for appointment thereto. Pursuant to such requisition the personnel director shall make or cause to be made an investigation to determine whether or not such a vacancy does exist and to report his findings to the commission. If, upon consideration of the facts, the commission determines that such a vacancy does exist, it shall order the personnel director, within thirty days of the date such requisition was made, to certify the name of the person who is highest on the appropriate re-employment list, or employment

forth the manner of certification and appointment to positions in the competitive division of the classified

list if no re-employment list exists, for the class to which the vacant position has been allocated and who is willing to accept appointment. If, upon consideration of the facts, the commission determines that a vacancy does not exist, it shall order the personnel director to serve notice on the appointing authority making the request that no appointment may be made. If the appointing authority declares its desire not to fill a vacant position or if the appointing authority fails to serve notice on the personnel director within the thirty-day period set forth in this section, the commission shall at its next regular meeting abolish the position from the classified service. If there is no appropriate re-employment list for the class, the personnel director shall certify the name of the person standing highest on the employment list established for the class. If more than one vacancy is to be filled, an additional name shall, in like manner, be certified for each additional vacancy. The appointing authority shall forthwith appoint such person to such vacant position. When requisition is so made and is approved by the commission in accordance with the provisions of this section, or when a position is held by a temporary appointee and a re-employment list or employment list for the class of such position exists, the personnel director shall forthwith certify the name of the person eligible for appointment to the appointing authority and such appointing authority shall forthwith appoint the person so certified to such position. *No person so certified shall be laid off, suspended, given leave of absence from duty, transferred or reduced in pay or grade except for reasons which will promote the good of the service, specified in writing, and after an opportunity to be heard by the Commission and then only with its consent and approval.* Appointments shall be regarded as taking effect upon the date when the person certified for appointment shall report for duty. A person tendered certification may waive or refuse certification in writing for a period, for reasons satisfactory to the commission, and such waiver or refusal shall not affect the standing or right to certification to the first vacancy in the class occurring after expiration of such period. If such waiver or refusal shall be filed in writing with the commission, and, if after one waiver has been filed and the period thereof has expired, a person tendered certification shall fail to report for duty forthwith after tender of certification has been made, his name may, at the discretion of the commission, be stricken from all lists for such class. Acceptance or refusal of temporary appointment or of an appointment to a position exempt from the provisions of this act shall not affect the standing of any person on the list for permanent appointment. To enable appointing officers to exercise sound discretion in the filling of positions, no appointment, employment or promotion in any position in the competitive division of the classified service shall be deemed final until after the expiration of a period of three to six months probationary service, as may be provided in the rules of the civil service commission. The commission, the personnel director and the executive head of the department concerned

service.[4] Pursuant to § 11, a person certified by the personnel director for appointment to a position in the competitive division is afforded the opportunity to be

shall determine the permanent appointment. During the probationary period, they may terminate the employment of the person so certified if, during the performance test thus afforded, upon observation or consideration of the performance of duty, they shall deem him unfit for service, whereupon the personnel director shall designate the person certified as standing next highest on any such list and such person shall likewise enter upon such duties until some person shall be found who is deemed fit for appointment, employment or promotion and who shall have occupied the position for the probationary period provided therefor, whereupon the appointment, employment or promotion shall be deemed to be permanent. . . ." (Emphasis added.)

[4] Section 3 of the Bridgeport charter divides the civil service of the city into classified and unclassified services. In § 3A the classified service is divided into the competitive and noncompetitive divisions.

"[Bridgeport city charter, Special Act 431 (1945)] Section 3. The civil service of the city is hereby divided into the unclassified and classified service. The unclassified service shall comprise: (a) the mayor and all officers elected by the people; (b) all executive offices or positions specifically created by charter and the method of filling which is now governed by specific and express provisions of the charter, including the civil service commissioners, superintendent of schools, assistant superintendent of schools, superintendent of the department of public welfare and officers and employees of the city court, juvenile court and probate court, with the exceptions hereinafter noted; (c) members of advisory boards and committees appointed by the mayor and serving without pay; (d) members of any board or commission appointed by the common council; (e) all classes of teachers in the school system of the city so far as their original appointments thereto are concerned; (f) the deputy director of public works, the assistant city treasurer, the assistant town clerk, the assistant city attorney and the assistant city engineer. The classified service shall include all other offices or positions existing at the time of the passage of this act or thereafter created, including all positions and offices in the police department, including that of superintendent of police, and all positions and offices in the fire department, including that of chief engineer. The position of purchasing agent of the city of Bridgeport established under the provisions of section 6 of number 235 of the special acts of 1927, is included in the classified civil service created under the provisions of number 407 of the special acts of 1935, provided the person holding said position on the effective date of this act shall be retained without preliminary or performance tests in such position and shall thereafter be subject in all other respects to the provisions of said number 407 of the special acts of 1935, as amended. Any provision of said act, inconsistent with the placing of all classes of teachers in the

heard by the commission under certain circumstances. Since § 11 concerns only the competitive division, however, that provision does not furnish the plaintiff with any right of appeal. Hence, the commission was without the statutory authority to sustain his appeal.

Notwithstanding the commission's lack of authority to hear this matter, the plaintiff contends that "the defendants must comply with certain procedural safeguards, constitutionally and statutorily mandated, in order to legally effectuate his layoff." He argues that § 11 of the Bridgeport city charter imposes such safeguards with regard to layoffs of competitive employees by providing them with a right to be heard before the city's civil service commission and that it is unconstitutional to deprive him of similar safeguards. The defendants maintain that the right to a hearing under § 11 accrues only to an employee who is removed for cause and not to one laid off for economic reasons. The trial court, agreeing with the plaintiff, interpreted § 11 to enable competitive employees to appeal fiscally motivated layoffs to the commission, and held that the

school system of the City of Bridgeport, insofar as their original appointments thereto are concerned, in the unclassified service of said city is amended to that effect."

"[Bridgeport city charter, Special Act 431 (1945)] Section 3A. The classified service is divided into two parts, which shall be designated as the competitive division and the non-competitive division. The non-competitive division shall comprise: (a) unskilled, manual labor; and (b) positions or classes of positions for which the commission, by unanimous vote of all its members, decides that it is not practicable to determine the relative merit and fitness of applicants by competitive examination. The competitive division shall include all other offices or positions of the classified service. The Commission shall designate the position or class of positions which shall be in the non-competitive division, and thereafter no position or class of positions shall be placed in the non-competitive division until after a public hearing, unanimous vote of approval by the membership of the commission and approval by the mayor. The commission may, at any time, and without restriction, change a position or class of positions from the non-competitive to the competitive division."

absence of such a right for noncompetitive employees violated equal protection guarantees. We disagree with the trial court's reasoning.

The equal protection clause of the fourteenth amendment to the United States constitution requires that "all persons similarly circumstanced shall be treated alike." *Royster Guano Co.* v. *Virginia,* 253 U.S. 412, 415, 40 S. Ct. 560, 64 L. Ed. 989 (1920). Article first, § 20, of the Connecticut constitution,[5] this state's counterpart to the federal clause, imposes the same requirement in that "[t]he equal protection provisions of the federal and state constitutions have the same meaning and limitations." *Keogh* v. *Bridgeport,* 187 Conn. 53, 66, 444 A.2d 225 (1982). We have no occasion, however, to consider whether there is a rational basis for limiting the right of appeal contained in § 11 to competitive employees because we have concluded that this provision of § 11 is inapplicable to fiscally motivated layoffs of either competitive or noncompetitive employees.

Section 11 provides in pertinent part: "No person so certified [by the personnel director for appointment to a position in the competitive division] shall be laid off, suspended, given leave of absence from duty, transferred or reduced in pay or grade except for reasons which will promote the good of the service, specified in writing, and after an opportunity to be heard by the Commission and then only with its consent and approval." This provision affords a hearing to competitive employees who have been laid off "for reasons which will promote the good of the service." The phrase "the good of the service" has previously been interpreted by this court and has not been held to encompass removals for economic reasons. Rather, the "phrase

---

[5] "[Conn. Const., art. I § 20, as amended] No person shall be denied the equal protection of the law nor be subjected to segregation or discrimination in the exercise or enjoyment of his or her civil or political rights because of religion, race, color, ancestry, national origin or sex."

has been limited in scope to situations involving misconduct, incompetence, or other reasons relating to the effective performance of duties." *Wagner* v. *Connecticut Personnel Appeal Board,* 170 Conn. 668, 672, 368 A.2d 20 (1976); *State ex rel. Hartnett* v. *Zeller,* 135 Conn. 438, 441, 65 A.2d 475 (1949); see General Statutes § 5-240 (c). In view of the meaning ascribed to these words in the past, we hold that § 11 of the Bridgeport charter does not provide employees in the competitive division the right to be heard by the commission in the event of a fiscally motivated layoff. In respect to such a layoff, competitive and noncompetitive employees are treated alike, neither having any right of appeal to the commission. Absent any disparity in treatment of competitive and noncompetitive employees regarding appeals from layoffs for economic reasons under the Bridgeport charter, the plaintiff's equal protection claim cannot stand.

## II

Although neither the trial court nor the defendants addressed the question of whether the plaintiff was entitled to a hearing before the commission as a matter of due process, the plaintiff has reasserted this claim on appeal. In *Perretta* v. *New Britain,* 185 Conn. 88, 440 A.2d 823 (1981), this court considered whether laid off employees had a due process right to be heard prior to discharge and was able to "discern no constitutional basis for a hearing when termination is grounded on financial needs of the employer rather than fault of the employee. *Bishop* v. *Wood,* 426 U.S. 341, 349–50, 96 S. Ct. 2074, 48 L. Ed. 2d 684 (1976); *Board of Regents* v. *Roth,* 408 U.S. 564, 573–74, 577, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972)." Id., 96–97. As previously mentioned, the plaintiff has made no claim that he was discharged for noneconomic reasons. Matters of economic policy are properly relegated to the executive branch of a municipality. As we stated in *Perretta,* "[w]hen the

city determines that its welfare and the proper management of its financial resources require reduced expenditures, it has discretion to husband those resources by laying off city employees whose performance it judges expendable." Id., 102. To hold that a civil service commission or other tribunal is constitutionally mandated to review such budgetary decisions would significantly impede fiscal planning and hinder effective city management.

There is error, the judgment is set aside and the case is remanded with direction to render judgment for the defendants.

In this opinion the other judges concurred.