[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Although this request for an order of mandamus concerning garbage pickup in the City of Stamford has been the subject of much attention in the media, many hours of court hearings, and reams of briefs, the issue in the case really involves a very basic proposition; whether an ordinance duly enacted by the legislative branch of city government must be executed and implemented by the executive branch of that government. I believe that the answer is clearly yes.
Stamford's current government was treated by Special Act No. 312, 1947, which became its Charter, and which provides for a legislative body, the Board of Representatives; an executive branch, the mayor; and financial agency, the Board of Finance. The Charter provides, among other things, that the legislative power of the government of Stamford is "vested in the Board of Representatives." Charter See. C2-10-1. A municipal charter ". . . is the fountainhead of municipal power. . . the Charter serves as an enabling act, both creating power and prescribing the form in which it must be exercised." Perretta v. New Britain, 185 Conn. 88, 92, 440 A.2d 823
(1981). Stamford's Charter gives to the Board of Representatives the power to "enact ordinances. . . for the management of its business." See. C2-10-2(1). A local ordinance is a municipal legislative enactment. Maciejewski v. West Hartford, 194 Conn. 139, 151, 480 A.2d 519 (1984). The only restriction on the enactment of ordinances in Stamford is that they may not be in conflict with any other provision of the Charter or any other law. The defendants in this case conceded that the ordinance regarding rear yard garbage pickup was not in conflict with any such provision or law, and thus may be deemed a valid legislative enactment for purposes of this lawsuit.
It is equally clear that the Charter vests administrative and executive authority in the office of the mayor, Sec. C3-10-1, whose powers include the performance of acts prescribed by the Charter and "by ordinances." Sec. C3-10-7. Although the brief of the defendants, Mayor Thom Serrani and Donald T. Donahue, Commissioner of Public Works, CT Page 6695 refers to the mayor as the "budget making authority", it is clear that the mayor proposes a budget, the Board of Finance approves it, and the Board of Representatives adopts or enacts the budget.[1]
Turning next to the ordinances regarding household refuse, an ordinance was first enacted in 1972, and in essence provides that the municipal government was obliged to collect household garbage from any area of the city that also had access to the municipal sewer system. These areas, which generally lie south of the Merritt Parkway, are deemed to constitute a separate tax district. The residents in such a district pay an additional tax to cover the cost of refuse collection.
This first ordinance stated that garbage should be picked up in a location prescribed by the Commissioner of Public Works. Testimony at the trial indicated that historically garbage was picked up at the rear of homes. In 1982 Ordinance No. 479 was amended to clarify that residents shall not be required to plague garbage at curbside.
In 1985 the Board of Representatives enacted Ordinance No. 547 Supplemental which provided that the container for refuse was to be located either at the curb or at some other location at the option of the homeowner. Code of Ordinances S 137-2. In addition it was stated that the commissioner could not change the location requirements without specific approval of the Board of Representatives.
In May of this year, as this issue began to heat up, the Board of Representatives passed Ordinance 675 Supplemental, amending Sec. 137-2A(2), which stated specifically that household refuse was to be picked up in the back yard of the various homes served by the city, or as the homeowner otherwise directed. This ordinance was adopted May 6, 1991, and was neither approved nor vetoed by Mayor Serrani, which meant that the amended ordinance became effective on May 26, 1991, as if formally approved. Charter Sec. C2-10-1.
The mayor refuses to implement this ordinance and has directed that the homeowners bring their refuse to the curb. The reason for this decision was stated to be the general fiscal problems facing Stamford in particular, and the northeast in general, and the desire to cut back on city expenses. The evidence disclosed that five employees were used to pick up garbage in the rear of homes. Two men would come first, pick up the garbage pails and bring them to the curb. A municipal truck with a driver and two other men CT Page 6696 would then arrive, place the garbage in the truck and leave the cans at the curb. The first two-man crew would then return and replace the garbage pails in their original locations in the rear of the home in question. Curbside pickup, according to the defendants, would require only one truck and a crew totaling three men. The mayor, effective July 1, 1991, terminated the employment of twenty-seven employees of the Department of Public Works, claiming that curbside pickup would save almost a million dollars a year. The notice of curbside pickup refers to "a reduction in funding," and also to "the interests of reducing taxes."
In furtherance of the decision to implement curbside pickup only, Mayor Serrani requested an appropriation of $1,654,436 for the collection of refuse by the Department of Public Works for one year, July 1, 1991 to June 30, 1992 (fiscal year 1991-1992). The Board of Finance, however, reduced this amount and appropriated $1,272,642, which would enable collection in the rear yard but for six months only.[2]
The plaintiffs, Richard L. Lyons, a member of the Board of Representatives, and Dannel P. Malloy, chairman of the Board of Finance, seek an order of permanent mandamus from this court directing the mayor to comply with ordinance $675 Supplemental mandating rear yard pickup.[3]
Our most recent case on the issuance of a mandamus in municipal setting, Hennessey v. Bridgeport, 213 Conn. 656,569 A.2d 1122 (1990), reiterates that such a writ may be granted only when a party proves; "(1) that the plaintiff has a clear legal right to the performance of a duty by the defendant; (2) that the defendant has no discretion with respect to performance of that duty; and (3) that the plaintiff has no adequate remedy at law." Id., 659. The Supreme Court describes these criteria as a "demanding test", and also indicates that "special caution" is required before granting such a writ because it involves public funds and an impact on taxpayers. Id., 659-660. General Statutes52-485.
The defendants cite Hennessey as permitting the executive branch to in effect ignore municipal ordinances if the financial conditions of that municipality are sufficiently serious to warrant such action. The plaintiff, who had been appointed administrator for humane affairs was dismissed by the mayor of Bridgeport due to what was described by the court as a "severe deterioration in the city's financial condition." Id., 657. The charter provided that the mayor was obliged to appoint an administrator for humane affairs "for a term of four years". The court held CT Page 6697 that fiscally motivated layoffs are permissible "unless some charter provision expressly imposes such constraints on fiscal payoffs," Id., 663, and that the Bridgeport charter had no limitation on such layoffs. The court held ". . . that the mayor's responsibility to manage the city's finances affords him the implied power to dismiss city personnel for serious fiscal reasons," Id., 661, and that mandamus would not lie where an executive authority has "discretion" to perform or not perform his duties. Id., 664, n. 6.
I believe that Hennessey is distinguishable for several reasons. First, the case concerns layoffs of personnel. In Stamford there is an ordinance mandating rear yard pickup. No one has challenged the mayor's termination of employment of twenty-seven people in the refuse collection division effective July 1, 1991.[4] If the ordinance must be obeyed it is the responsibility of the executive branch to do so, but to use its own discretion in carrying out this task. Whether this involves the same number of people perhaps working longer hours, or perhaps the rehiring of some or all of the employees just laid off, or some other solution, is clearly not this court's business. How the chief executive implements an ordinance is a matter of his own discretion. The court's role must be limited to an order directing the implementation of an ordinance if such an order is warranted by the facts and the law.
Secondly, the plaintiff in Hennessey, 658, n. 3, conceded that he was not "disputing that the city's financial crisis was the sole reason for his dismissal. The situation in Stamford is different. The plaintiffs deny that these is any kind of financial crisis.[5] In addition, the court in Hennessey pointed out that [i]ndeed, Bridgeport's financial condition was so troubled that the General Assembly enacted special legislation establishing a financial review board to oversee the city's operation and authorizing a special bond issue to finance the city's deficit." Id., 658. No such review board has been appointed for this city.
Furthermore, the money for rear yard pickup in this fiscal year's Stamford budget has already been appropriated, at least for the first six months. The mill rate for the entire 1991-1992 budget year commencing July 1, 1991 has been set by the Board of Finance on the basis that there would be rear yard pickup. Tax bills containing a charge for rear yard pickup have already been sent to those residents of the city who have municipal garbage collection. This is markedly different from the situation, for example, in Paretta v. New Britain, supra, 103, where the chief CT Page 6698 executive officer was deemed to have the authority ". . . to order layoffs of city employees for the purpose of implementing a properly promulgated municipal budget that mandates fiscal stringency." A budget had been adopted, in other words, which required the mayor to lay off employees in order to stay within the requirements of the budget. Here in Stamford the budget has also been "properly promulgated", but it includes funding for rear yard pickup. Thus the stated reasons for curbside pickup are not credible: (i) "a reduction in funding", as there has been no such reduction, because both the Board of Finance and the Board of Representatives have approved sufficient funding, albeit for six months, to implement rear yard pickup; and (ii) "in the interest of reducing taxes," but, as mentioned previously, the tax bills that have already been sent out to those Stamford residents who are entitled to municipal pickup include a charge or tax for rear yard pickup.
Finally, if Hennessey is construed to permit an executive to not carry out the requirements of an ordinance in cases of dire fiscal straits and thus to cut services mandated by such ordinance, unless the ordinance itself provides otherwise, I believe that the Stamford ordinance regarding rear yard pickup can be so construed because of the provision permitting the Commissioner of Public Works to change location of the garbage pails only with the Board of Representatives' prior approval.
On the basis that Hennessey is distinguishable from this case, we are left with the proposition that was succinctly stated just some six months ago by an Illinois appellate court to the effect that "[a] municipality must follow its own valid ordinances." AD-EX, Inc. v. City of Chicago, 565 N.E.2d 669 (Ill.App. 1 Dist. 1991). McQuillan, Municipal Corporations, 15.42, p. 170, puts it this way; A city may suspend an ordinance by Ordinance. But the operation of an ordinance cannot be suspended by the act of municipal officers, even though the suspension is attempted by resolution. . . In other words, corporate authorities have no power other than legislative power duly exercised to abrogate or suspend an ordinance or to authorize a violation of it."[6]
In conclusion, it is my opinion that the ordinance mandating rear yard pickup is a valid exercise of legislative authority and must be implemented by the executive branch of government, and further that the plaintiffs have sustained their burden of proof that they have a clear legal right to the relief claimed; that rear yard pickup is mandatory, not discretionary; and that they CT Page 6699 have no other adequate remedy to enforce the ordinance. Accordingly a writ of mandamus should and hereby does issue directing the defendants to implement the ordinance concerning rear yard pickup of garbage by Monday, July 8, 1991.
No costs are charged to either party.
So Ordered.
Dated at Stamford, Connecticut, this 3rd day of July, 1991.
WILLIAM B. LEWIS, Judge