[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff Andrew Simso, III, appearing pro se brings this mandamus action asking this court to (1) vacate a consent order entered into between the Commissioner of Motor Vehicles and a used car dealer on November 6, 1991 and to (2) order the Commissioner to conduct an administrative hearing on plaintiff's 1988 consumer complaint against that car dealer. CT Page 1830-ag
The facts are as follows. On January 6, 1988, Andrew Simso, III (Simso) purchased a 1981 used Ford pickup truck from a used car dealer in Danbury, Connecticut, Ralph's Auto Sales, for $4,837.50. Joe LoStocco, the son of the owner Ralph LoStocco, told Simso that he had installed a new exhaust system and a new radio and that the car was mechanically and electronically in working order. The very day Simso picked up the truck and drove it off the dealer's lot it died. A tow service restarted the truck and Simso returned to the dealer where the plugs were changed. The next day after traveling a short distance the car died again. The car dealer at this time replaced the carburetor. When Simso took it out for a test run again a problem was experienced. This time Joe LoStocco told Simso that the truck had a bad head gasket and that he would replace the engine for an extra $400. Simso did not agree to the new engine but Joe LoStocco told him that Ralph's Auto Sales was going to put in the new engine anyway. Plaintiff was told to take the car to Tente's where the engine was installed. After the engine was installed the truck stalled every time Simso took his foot off the gas. Simso complained to LoStocco who refused to do anymore work on the truck.
Simso then took the truck to a garage for an evaluation of work which needed to be done. This garage found that a heat riser was missing and that there was no emissions equipment on the truck. Simso brought this to the attention of Joe LoStocco. Simso asked for the year of the installed engine but was not given it. At that point Simso asked Joe LoStocco to take back the truck. LoStocco refused. Simso returned to the garage for a writing as to what was missing on the truck. On February 8, 1989, Simso complained to the Emissions Inspector, Warner. On February 9, 1988, Simso filed a complaint with the State Motor Vehicle Department, Dealers and Repairers Division (DMV). That same year Simso sued Ralph LoStocco d/b/a Ralph's Auto Sales. Judgment in favor of Simso entered in that civil action on August 17, 1993 with an award of $1,684.75, $950.00 of which represented the reasonable value of a new motor. To this date the check issued in that case has not been negotiated by Simso who had wanted his attorney to appeal the decision. When his attorney failed to do so within the requisite time, Simso terminated his attorney's representation.
As for the 1988 complaint with DMV nothing happened until 1991 because the complaint and documentation filed with the complaint got lost and any and all records of the case deleted from the DMV computer. In 1991 following repeated efforts by Simso to have the complaint addressed DMV had finally inspected the truck and found it had multiple deficiencies. Three people from the Emissions unit were involved in the inspection, which took place on March 13, 1991 at the Danbury Emissions Station. The CT Page 1830-ah truck was found not to be in compliance. The motor could not be identified. The motor was referred to as a "junkyard" engine. The truck was not eligible for a waiver because of its multiple deficiencies and the absence of a motor number. Without this number there was no way to determine the year of manufacture of the motor. The dealer had no information regarding the motor even though a customer is entitled to know what motor is put in his vehicle. It was also determined at the time of this investigation that the emission waiver given by Emission Inspector Warner should not have been issued to the dealer when the truck was sold because of the multiple deficiencies present and the absence of an engine number. Warner himself conceded that it was an error on his part to issue that waiver.
The matter was scheduled for a contested hearing on November 6, 1991. However, prior to the hearing DMV initiated efforts at settling the case. Discussions took place between DMV staff, the dealer's attorney and Joe LoStocco. Simso was given 24 hour notice by phone of the hearing and despite the short notice was there. However, he was not allowed to be present during the settlement discussions and the drafting of the consent decree. Simso did not accept the consent decree which called for further repair of the truck but did not provide for replacing the motor.
The problem with the consent decree as Simso tried to point out to those DMV representatives involved in structuring the consent order, was that the motor had no number and without that number parts necessary to repair that motor could not be properly identified and thus could not be procured. This problem was readily acknowledged in the instant case by a DMV employee who testified that since the truck could not be repaired the matter would have to come back to DMV at which time a new motor would be ordered by DMV so that there could be compliance with the consent decree. However, no one bothered to explain this to Mr. Simso who flatly refused to bring the truck in for repair because it would be an act of futility.
Attorney Swafford, a staff attorney with DMV who was to have participated in the DMV hearing, had provided her documentation by Simso which she had on file and would have used at the hearing had one been held. This documentation confirmed that the truck sold to Simso did not have an identifiable engine number and without this could not pass emissions. Attorney Swafford was present while Simso was arguing to Attorney Ruby, the DMV mediator, that absent an engine number the truck could never conform with the emission law; that even if he got a one year waiver there were no assurances he could get waivers for any additional years or that he would be able to sell the truck. Attorney Swafford CT Page 1830-ai confirmed that Simso did not agree with the consent order.
It is the plaintiff's position that there is no valid consent decree which absolves DMV from holding the hearing on the contested case with Ralph's Auto Sales, which DMV found cause to hold after its investigation of Simso's complaint. The settlement discussions failed to produce a viable resolution of Simso's amply documented complaint of numerous serious deficiencies in the truck sold him. Inspector Warner's admission that the emission waiver issued by him to the dealer before the sale to Simso was in error removes any question that the motor in the truck on which he issued the erroneous waiver was the same motor in the truck when the dealer sold the truck to Simso back in 1989. Though Ralph LoStocco died in 1997, his death does not render the complaint moot because the son Joe LoStocco took over the dealership and merely changed its name. There is also the matter of the bond which DMV required be posted to insure the consent order was carried out.
A party seeking a writ of mandamus must establish: "(1) that the plaintiff has a clear legal right to the performance of a duty by the defendant; (2) that the defendant has no discretion with respect to the performance of that duty; and (3) that the plaintiff has no adequate remedy at law." Hennessey v. City of Bridgeport, 213 Conn. 656,569 A.2d 1122 (1990).
There is no question that a citizen has the right to use mandamus to ensure that the laws are followed. In State ex rel. Golembeske v. White,168 Conn. 278, 362 A.2d 1354 (1975) the Town of Milford refused to provide a location within the town for the disposal of sanitary wastes as required by law. The Town was ordered to comply with the waste disposal requirements. The court in that case stated that "judgment in the present case does no more than remind the defendants of the law and direct them to comply. . . ." Id. at 284. The defendant DMV agrees that the provisions of Sections 14-51 to 14-65k and the regulations adopted thereunder contemplate that the purchaser of a used motor vehicle may file a consumer complaint with DMV in connection with that sale but that there is nothing in the language of those statutes and regulations that confer a "clear legal right" to have DMV process the complaint in a particular manner; that there is no "clear legal right" to have his consumer complaint against a used car dealer adjudicated in an administrative hearing held by DMV. In fact, DMV points out Section 14-63
of the Connecticut General Statutes and regulations, RCSA § 14-63-46, give the Commissioner the discretion to settle a case with a dealer when the Commissioner, in his opinion, deems it to be equitable to do so. CT Page 1830-aj
In the instant case DMV fashioned a consent order which could not be carried out because the repairs ordered were ordered on an unidentifiable engine, an engine which had no number, an engine which was termed by DMV inspector Hobbs to be a "junk yard engine." Though this point was made repeatedly by Simso to Ruby, the mediator, Ruby chose to ignore this crucial information, crucial because no repair work could be done without it. It cannot be said that there were equitable considerations here as a basis for substituting a meaningless consent order with a hearing which could have addressed the myriad violations alleged against this dealer and for which DMV found probable cause to hold a contested hearing.
The second prong of the inquiry involves the question of discretion. Mandamus will lie where the defendant has no discretion with respect to the performance of the duty which the plaintiff has a clear legal right to. In the instant case the plaintiff does not complain about the decision by DMV to try to settle the matter short of a hearing. What the plaintiff does complain about is the consent decree which comes out of those settlement discussions which cannot be complied with because the mediator did not bother to inform himself either by asking the plaintiff, complainant, who was available but not allowed to participate in the settlement discussions, or to get from DMV's own records the elements of the complaint being dealt with. The defendant DMV has no discretion under C.G.S. § 14-63 to settle a case with a consent order which on its face cannot be carried out; which ordered repairs no one could make because the engine in the truck could not be identified. It had no number.
The defendant cites Riley v. State Employees Retirement Commission,178 Conn. 438, 442, 423 A.2d 87 (1979) for the proposition that "the duties of an administrative agency . . . necessarily include the right to exercise discretion, and the essence of such discretionary power is that the agency or commission may choose which of several permissive courses will be followed. In exercising that discretion, the factors to be taken into consideration "are not mechanical or self-defining standards,' and, thus, wide areas of judgment are implied . . . Such discretion is the `lifeblood' of the administrative process." The defendant goes on to point out that where there is the possibility of suspending or revoking the license of a used car dealer the DMV Commissioner acts `in a quasi-judicial capacity and that in fact the DMV Commissioner was directed to adopt regulations establishing a procedure under which a licensee could stipulate to a complaint and waive his right to a hearing. The regulation adopted by the DMV Commissioner is Reg. Conn. State Agencies § 14-63-46 which provides in pertinent part: CT Page 1830-ak
 `. . . When, in the opinion of the Commissioner . . . and after a review of the complaint and any investigation, conference, interview or informal hearing which may have been conducted by the Department of Motor Vehicles, it is determined that the proposed terms of settlement are equitable.' (emphasis added)
Finally the defendant argues that mandamus will not lie to review a discretionary action of a public officer or board and compel a different course of action. Tremblay v. Connecticut State Employees' RetirementCommissioner, 170 Conn. 410, 365 A.2d 1125 (1976). In Tremblay the plaintiff was seeking to overturn the decision of the Retirement Commission denying him benefits. Tremblay is not in point with the instant case. The plaintiff's complaint in the instant case is that the consent order crafted from the informal settlement discussions is a nullity because it cannot be implemented and in fact it was known to be a nullity when entered into by DMV with the dealer.
As for DMV's contention that the plaintiff could have moved to intervene and thus gain party status, or that he could have appealed the order within the time allowed for taking an appeal, DMV only gave the plaintiff twenty-four hour notice by phone and the plaintiff was told by Ruby, after he complained about the order, that there was no record of the proceedings and that he could not appeal.
This court finds that the second prong of the mandamus requirement has been met.
Finally, on the question of whether Simso had an adequate remedy at law, the defendant DMV argues that he did since Simso had a suit pending against the used car dealer which he brought around the same time he filed his complaint with Motor Vehicles. The civil action started at the time DMV had lost his complaint, does not establish that Simso had an adequate remedy at law. Only a portion of C.G.S. § 14-64 deals with money. The main thread of the statute concerns DMV's mandate to enforce the law against licensees. Simso seeks a writ of mandamus to force DMV to honor its statutory duties and to ensure that the used car dealer is appropriately disciplined. The civil action brought by Simso did not provide such a remedy.
Writs of mandamus have two aspects. In one, the purpose is to enforce a private duty owed to an individual. In the other, the writ is sought to CT Page 1830-al enforce a public duty. See Erickson v. Foote, 112 Conn. 662, 153 A. 853
(1931). In the instant case, the enforcement of a public duty, ie to enforce the laws and policy of the state, is at issue. The fact that Simso has suffered a monetary loss that is specific to him does not defeat this action. Simso seeks this writ of mandamus to have DMV carry out the law and protect him and other consumers. This is a duty owed to all citizens of this state.
The relief sought in this writ of mandamus is that DMV vacate the improper consent order and properly conduct the contested case begun with the complaint filed by Simso in 1988.
This court having concluded from the facts found that the consent order could not be implemented and that this was known to DMV at the time it was negotiated with the used car dealer, the consent order is hereby declared null and void. The affect of this court's declaration is to put the DMV back to where it was before the consent order was entered into, that is poised to hold a contested hearing. This court is satisfied that DMV has available to it all of the records and involved individuals needed to proceed in this matter. Even though Ralph LoStocco died in 1997 his son Joseph LoStocco took over the used car dealership and presently operates it under a different name. Joseph LoStocco was the person the plaintiff dealt with when he bought the car. Joseph LoStocco was the person who together with his attorney appeared for the DMV November 6, 1991 contested hearing. Joseph LoStocco was the one who entered into the November 6, 1991 consent decree and signed it as the respondent. There may still be the bond imposed on the dealer at the time the consent order was entered into, to cover any civil penalties which DMV may impose pursuant to its authority under C.G.S. § 14-63.
Accordingly it is the order of this court that a writ of mandamus issues under which the Department of Motor Vehicles is ordered to pick up where it left off before undertaking the settlement discussion of November 16, 1991, which culminated in the consent decree, that is, ready to hold a contested hearing and to proceed according to the rules and regulations promulgated by DMV for such contested hearings.
Hennessey, J.