[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiffs in this matter are JoAnn Battistoni, Audrey Heimler and Arnold Heimler (hereinafter the plaintiffs). The plaintiffs commenced this action against the Zoning Board of Appeals for the town of Morris (hereinafter the ZBA). The Woodbury-Southbury Rod Gun Club, Inc., (hereinafter the Club) is the owner of the property of issue in this matter. The Club moved to intervene and was granted status as an additional defendant in this action.
The facts in this matter are that the Club purchased property in the town of Morris, known as the Anderson Farm, located on Anderson and Benton Roads on May 20, 1999. (See Plaintiff's Exhibit 1.) The property had been farmed for years by its prior owners. The property consists of approximately 238± acres of land. The property is located in an R 60 zone as defined in the Morris Zoning Regulations (hereinafter the Regulations). (Plaintiff's Exhibit 3.) Pursuant to Sections 21 and 22 of the town of Morris Zoning Regulations, hunting and fishing are allowed as an accessory on property located in this zone. The evidence presented at trial indicated that hunting has taken place on this particular property for many years prior to the purchase of the property by the Club.
By way of background, the real estate broker who negotiated the purchase of the aforementioned property by the club was Robert McNamara of McNamara Real Estate located in Morris. Mr. McNamara was also at the same time the Zoning Enforcement Officer of the town of Morris.
Subsequent to the purchase of the property by the Club, the plaintiffs appeared before the town of Morris Planning and Zoning Commission (hereinafter the Commission). The plaintiffs' claim before the Commission is that since the Club owned the property, the Club needed to obtain a special exception use permit to conduct hunting and fishing activities on the property. The plaintiffs relied upon the definition of Club within the Zoning Regulations (Plaintiff's Exhibit 3, Section 9) and the CT Page 12576 "Special Exceptions" requirements in Section 52 of the Zoning Regulations. The Club has maintained that it does not need to apply for a special exception due to the fact that the property continues to be used primarily as a farm and that any hunting or fishing that takes place on the property is only an accessory use.
The plaintiffs' additional claim before the Commission was that Mr. McNamara, as the Zoning Enforcement Officer for the town of Morris, should be disqualified from acting in this capacity on this property because there is a conflict of interest due to his having earned a real estate commission on the sale of the property to the Club. Mr. McNamara initially recused himself at the early Commission meetings on this issue. (See Plaintiff's Exhibits 4 and 6.) However, after the sale to the Club had taken place on May 20, 1999, Mr. McNamara refused to recuse himself any further issues regarding this property. He produced a letter opinion from Attorney Zizka indicating that any conflict of interest he may have had ceased when the sale of the property was consummated and he was paid his real estate commission. (Defendant's Exhibit 1.)
After several meetings of the Commission taking place between July and November, 1999; (see Plaintiff's Exhibits 9-14); the Commission did finally vote to recommend that the Club apply for a Special Exception Use for the property. (See Plaintiff's Exhibit 14) The Club, through its attorney, notified the Commission by letter dated January 12, 2000, that the Club's position was that they were still using the property primarily as a farm and therefore they did not need to apply for a special exception use. In addition, the Club maintained that the Commission could not regulate the Club as far as hunting and fishing activities were concerned because these activities fall exclusively under the authority of the state of Connecticut, department of environmental protection.
Thereafter, the plaintiffs pressured the Commission to act by requesting that the Commission order Mr. McNamara to issue a cease and desist order against the Club. The Commission did not order Mr. McNamara to issue a cease and desist order. Mr. McNamara took no action to require the Club to comply with the Commission's vote of November 3, 1999. After continued requests by the plaintiffs to the Commission to take action against the Club, the Commission at a meeting on May 3, 2000, addressed whether a cease and desist order should issue. (See Plaintiff's Exhibit 20.) After consideration of the issue, the Commission voted to not pursue any action against the Club and therefore, no cease and desist order would be issued against the Club.
The plaintiffs, as aggrieved parties, next appealed the Commission's decision of May 3, 2000, to the ZBA. The ZBA scheduled the plaintiff's appeal for its July 18, 2000, meeting. (See Plaintiff's Exhibit 24) At the CT Page 12577 meeting the ZBA, after considering the opinion letter from its counsel, Attorney Charles E. Roraback, moved and voted not to hear the plaintiffs' appeal. Because neither the Zoning Commission nor the Zoning Enforcement Officer had taken any action in this matter, the ZBA concluded that it did not have jurisdiction to hear this matter.
The plaintiffs thereafter commenced two separate causes of action as a result of the ZBA's action on May 3, 2000. The first cause of action was a direct zoning appeal pursuant to General Statutes § 8-8. This action was dismissed by this court, (Cremins, J.) by decision dated May 22, 2001. The court decision concluded that since the ZBA had not rendered "a decision" there was no decision that was appealable to the Superior Court.
The plaintiffs now ask the court to issue a writ of mandamus ordering the ZBA to hold a hearing on the plaintiffs' appeal from the Commission's decision dated May 3, 2000.
The issue before the court, is then, whether a writ of mandamus should issue based on the summary of facts indicated above.
The authority to issue a writ of mandamus is granted to the Superior Court pursuant to General Statutes § 52-485.[1]
The standard to be applied by the court in determining whether mandamus will issue is well settled. Town of Stratford v. State Board of Mediation Arbitration, 239 Conn. 32, 44 (1996).
 [M]andamus will issue only if the plaintiff can establish: (1) that the plaintiff has a clear legal right to the performance of a duty by the defendant; (2) that the defendant has no discretion with respect to the performance of that duty; and (3) that the plaintiff has no adequate remedy at law.
"Even satisfaction of this demanding test does not, however, automatically compel issuance of the requested writ of mandamus."Hennessey v. Bridgeport, 213 Conn. 656, 659 (1990). "In deciding the propriety of a writ of mandamus, the trial court exercises discretion rooted in the principles of equity." Id.
A writ of mandamus, however, is only an appropriate remedy under rare circumstances.
 "Mandamus is an extraordinary remedy. It is designed to enforce a plain positive duty. The writ will issue CT Page 12578 only when the person against whom it is directed is under a clear legal obligation to perform the act compelled and the party seeking the writ has a clear legal right to the performance."
Gelinas v. West Hartford, 225 Conn. 575, 586 (1993). McAllister v.Nichols, 193 Conn. 168, 171 (1984); see also Kosinski v. Lawlor,177 Conn. 420, 426 (1979).
In Hennessey v. Bridgeport, supra, 213 Conn. 659, the Supreme Court emphasized the nature of the remedy:
 It bears emphasis, however, that [t]he writ of mandamus is an extraordinary remedy to be applied only under exceptional conditions, and is not to be extended beyond its well-established limits. . . . Furthermore, [m]andamus neither gives nor defines rights which one does not already have. It enforces, it commands, performance of a duty. It acts at the instance of one having a complete and immediate legal right; it cannot and it does not act upon a doubtful or a contested right.
(Citations omitted; internal quotation marks omitted.)
Finally, this court notes the guidelines for review as stated inHannifan v. Sachs, 150 Conn. 162, 166 (1962):
 The function of the court in this action in the nature of the mandamus is not to interfere with the exercise of the judgment and discretion which the statute reposes in the appeal board but merely to decide the limited question whether the board, in exercising its judgment and discretion, acted in disregard of the law defining its powers, capriciously or arbitrarily, and not in the honest exercise of its discretion. . . . It is elementary that, while mandamus is available to compel the performance of a purely ministerial act, it will not lie to direct the performance of an act involving the exercise of judgment or discretion. . . . If a public officer or board acts within the scope of the delegated authority and honestly and fairly exercises his or its judgment in performing his or its function, mandamus is not available to review the action taken or to compel a different course of action . . . It is not the function of the court to review CT Page 12579 the conclusions reached by the appeal board or to inquire into the method by which those conclusions were reached.
(Citations omitted.)
After consideration of the testimony and evidence presented at the trial of this matter, the court makes the following conclusions relative to the plaintiffs sustaining the three prong burden stated in Town ofStratford v. State Board of Mediation and Arbitration, supra, 239 Conn. 44.
As to the first prong, the court concludes that the plaintiffs have failed to sustain their burden that they would be entitled to a clear legal right to the performance of a duty by the ZBA, i.e., there is no clear legal right to require the ZBA to hold the hearing requested by the plaintiffs.
As to the second prong, the court concludes that it was within the ZBA's discretion not to hold the hearing because, as outlined by in the letter from Attorney Charles E. Roraback, the underlying issue before the ZBA was whether or not it had jurisdiction to initiate an enforcement action when neither the Commission nor the Zoning Enforcement Officer have acted. (See Plaintiff's Exhibit 24.) The ZBA having concluded it did not have this authority to act granted to it by the town of Morris Zoning Regulations; (see Plaintiff's Exhibit 3); clearly had the discretion to decide as it did and not hear the plaintiffs' appeal.
Finally, as to the third prong the plaintiffs have an adequate remedy at law. The plaintiffs may bring a private enforcement action and seek injunctive relief. Reference is made to Reynolds v. Soffer, 183 Conn. 67,69 (1981), citing Karls v. Alexandra Realty Corporation, 179 Conn. 390,901 (1980): "[a]ny person specifically and materially damaged by a violation of the Zoning ordinances which has occurred or is likely to occur on another's land may seek injunctive relief restraining such violation." See also Castellon v. Board of Zoning Appeals, 221 Conn. 374
(1992); Blum v. Lisbon Leasing Corporation, 173 Conn. 175 (1977). In these cases, the Supreme Court found that the plaintiffs proper recourse was to commence a cause of action seeking to enjoin the landowner who is violating the town's zoning regulations. The burden would be on the plaintiffs to prove the zoning violation. This would be the proper course of action rather than this court granting the extraordinary remedy of a writ of mandamus.
For the foregoing reasons, the plaintiff's claim for relief of issuance of a writ of mandamus against the ZBA is denied. CT Page 12580
Judgment shall enter in favor the defendant Zoning Board of Appeals for the town of Morris and intervening defendant, the Woodbury-Southbury Rod Gun Club, Inc.
Agati, J.